EARNEST WEGNER, Appellant, v. JOSEPH H. KELLEY, Appellee.

**TELEGRAPHS AND TELEPHONES:** Construction and Mainte-
1    nance—Ingress and Egress for Landowner. Only at places of
ingress and egress along public highways need telephone wires
be placed and kept at such a height as to afford the property
owner *unobstructed* access to his lands for all ordinary use. At
places not of ingress or egress to adjoining lands, the owner of
the line may place and keep his wire where he pleases, *pro-
vided:*
1. He does not incommode the public in the use of the high-
way. ·
2. He exercises reasonable care at all times, in view of the
many and varied circumstances which may be manifest or rea-
sonably apparent to him while installing and maintaining his
lines.
It follows that what the landowner may properly *assume* with
reference to the wires, while using ways to and from his lands,
depends on whether he is using the *ordinary* way of ingress or
egress or whether he is using some *temporary or theretofore
unused* way.

WEAVER and PRESTON, JJ., dissent.

**EVIDENCE:** Relevancy, Competency, and Materiality—Ingress and
2    Egress to Property—Telegraphs and Telephones. On the issue
whether there were indications of a way of ingress and egress
at a certain point in the boundary line of a highway, evidence
is admissible that no such indications existed at a time two
months *subsequent* to the time in question, such evidence being
accompanied with statements of fact as to the condition of the
ground, vegetation, etc.

**NEGLIGENCE:** Evidence—Surrounding Facts, Etc. On the issue
3    of negligence, the surrounding conditions are always competent.

**TRIAL:** Instructions—Form, Requisites, and Sufficiency—Defining
4    Terms. It is not error, in the absence of a request, for the in-
structions to fail to define words in common use. So held as to
the words "ingress" and "egress."

**TRIAL:** Instructions—Form, Requisites, and Sufficiency—Hypercritical Objections. Instruction dealing with the conditions under which an injured party would and would not be guilty of contributory negligence reviewed, and held not to imply that the defendant was under no duty of care with reference to the subject matter in issue.

**HIGHWAYS:** Abutting Owners—Right of Ingress and Egress. The right of a property owner to have access to his property from a rural highway or city street may be limited to any extent, so long as reasonable and convenient access is preserved to him. So held in a case involving the maintenance of a telephone line.

*Appeal from Sac District Court.*—E. G. ALBERTS, Judge.

DECEMBER 18, 1917.                  ⁚

ACTION for damages consequent on collision with telephone wire was tried, submitted to a jury, and a verdict returned for defendant, and judgment was entered thereon. The plaintiff appeals.—*Affirmed.*

*Chas. D. Goldsmith,* for appellent.

*M. M. White* and *Malcolm Currie,* for appellee.

LADD, J.—Plaintiff, as tenant of his
1. TELEGRAPHS
AND TELE-
PHONES: con-
struction and
maintenance:
ingress and
egress for
landowner.
mother, was in possession of the E½ SE¼ of Section 28, in Township 89 North, of Range 36 West of the 5th P. M., and the NE¼ NE¼ of Section 33 in the same township. There were highways along the section lines each way, and a telephone line about 2 feet out from the west line of the north and south road. In the morning of July 1, 1914, plaintiff drove a team, hitched to wagon with hayrack on, from the house, at the southeast corner of the 80 acres, along the road in an easterly direction, and at the corner, turned south, and upon reaching the southeast corner of the 40 acres, veered to the right, and stopped. He got off the wagon, took down the fence, and, as the team started on, he jumped into the wagon, caught

hold of the lines, and, as he was driving through into his field, the telephone wire caught the ladder of the hayrack, slipped over it, and struck him in the face, cutting his lips, tearing out teeth, and breaking his jaw in three places. The telephone pole at the corner had been broken off in January previous, and the wire attached to the part of the pole remaining, and then wound around a fence post near by, so as to be about 7 feet above the ground. The evidence was in conflict as to whether the place where plaintiff was entering his field was a place of ingress and egress which had previously been used, and whether it so appeared; and the only errors assigned relate to rulings on the admissibility and sufficiency of evidence, and the giving of instructions.

2. EVIDENCE: relevancy: competency and materiality: ingress and egress to property: telegraphs and telephones.

I. The defendant testified to having examined the place where the accident occurred on September 1st thereafter, and was asked this question:

"Was there any indication that teams or vehicles had been driven through that place from the highway?"

Over objection "as incompetent, irrelevant and immaterial, and not in support of any legal issue in the case," he answered:

"No, sir; there was no evidence that there had been. There was grass growing up along the highway the same as everywhere else along the highway."

Appellant urges that the evidence should have been excluded, for that there was no showing that conditions were the same on September 1st as on July 1st previous. That may be; but tracks, if any there were, were not likely to be entirely obliterated in the meantime, nor grass to spring up so as to appear the way it did elsewhere along the highway. The time was not so remote as to exact the exclusion of the evidence, but remote enough to somewhat impair

its weight. Counsel also argue that the evidence adduced did not tend to support any legal defense.

3. NEGLIGENCE: evidence: surrounding facts, etc.

Were this to be conceded with reference to specific defenses, receiving it was not error, for it is always competent to prove surrounding conditions when negligence is charged. On this ground, objection to the question, "How far from the fence, where you drove through, was the traveled track of the road to that place?" propounded to plaintiff when called as a witness by defendant, was rightly overruled.

II. Exception is taken to the ninth paragraph of the court's charge to the jury, which reads:

"If there was a place of ingress and egress to the plaintiff's farm at the place where he attempted to go in on the day in controversy, and the defendant knew of the same, or could by reasonable diligence have discovered such condition, then the plaintiff is not bound to look to discover whether or not the telephone wires of the defendant would in any way interfere with his so entering his property, and the fact, if it be a fact, that this wire was down as complained of, and that he did not see it or did not look for it, would not make him guilty of contributory negligence. On the other hand, if there was no place of ingress or egress at the point in question, or the defendant could not by reasonable diligence have discovered such place, then it would be the duty of the plaintiff to use that degree of care and diligence which an ordinary reasonable and cautious person would exercise under like circumstances to discover whether his way was obstructed, and if, on using said degree of care and diligence, he failed to discover the wire, he would not be guilty of contributory negligence; but if he did not use said degree of care and diligence as above explained, and did not see the wire because of his failure to use said degree of care and diligence as above explained,

then he would be guilty of contributory negligence such as to defeat his action."

4. TRIAL: instructions: form, requisites, and sufficiency: defining terms.

Fault is found because of not including a definition of "ingress and egress." Such an omission did not render the instruction erroneous, if correct otherwise; for, if essential, the words might have been defined in another paragraph of the charge. Moreover, these words are in common use, and, if counsel for plaintiff feared their meaning would not be comprehended by the jury, he should have requested an appropriate instruction. Not having done so, he is not in a situation to complain.

5. TRIAL: instructions: form, requisites, and sufficiency: hypercritical objections.

Again, it is said the jury might have inferred, from the language employed, that, if there were no place of ingress and egress, defendant owed no duty of keeping the telephone line in repair. Nothing contained in the instruction warrants such an inference. It deals primarily with the subject of contributory negligence, and want of care on the part of defendant is alluded to only with reference to the duty devolving on plaintiff in the use of the highway as a means of access to the land. The duty of defendant had been defined in Paragraph 6 by saying, in substance, that he was bound to so construct the telephone line as not to incommode the public, and to exercise ordinary care in maintaining the wires along the public highway so as not to imperil the safety of travelers, and that it was for the jury to say whether defendant had met these requirements; and in the 7th instruction, by saying that "the owner of a telephone line, situated in the highway, must so string its wires that these will not sag down in the highway and thereby injure one without fault lawfully using the highway," and that, if the owner omits so to do, he is liable for the injury suffered therefrom, if, in the ex-

ercise of reasonable diligence, he should have known of its condition; and thereafter, in the 10th instruction, by saying:

"In determining whether or not the defendant's negligence, if the same has been proved, was the proximate cause of the injury suffered by plaintiff, the test in law is this: Was the injury complained of, of such kind or character as might reasonably have been foreseen or expected as the natural result of the acts of the defendant which are complained of? The question is not as to whether the particular injury complained of in this case might reasonably have been foreseen or expected, but whether some injury of the kind or character of the one complained of might have been foreseen or expected as the natural result of the acts or omissions which plaintiff charges as negligence of the defendant."

Plainly enough, the court did not, in the instruction under consideration, relieve the defendant of any duty defined in the three instructions referred to, but did say, inferentially, that he was negligent if he knew there was an entryway there, or in the exercise of ordinary diligence should have known thereof. The instruction is not open to the criticism of making defendant's responsibility dependent upon whether the place of the accident was one of ingress and egress, although this was a matter for consideration.

6. HIGHWAYS: abutting owners: right of ingress and egress.

This brings us to the main controversy in the case: i. e., whether defendant, in stringing the telephone wire on the poles, was bound so to do as to afford plaintiff free and unobstructed access from the highway into his premises at every point along the line; or whether the defendant, in constructing and maintaining the line, may take into consideration that those interested in the land would

ordinarily enter only at the usual and used places of ingress and egress.

Section 2158 of the Code authorized the construction of a telephone line along the highway. This, according to our decisions, imposed no additional burden on the estate servient to the highway easement, but might not be done without in a measure interfering with access to the land where the poles are set; and, as the owner's title extends from the center of the earth to the dome of the skies, the wires are obstructions in a lesser degree. But an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway, though entire access may not be cut off. *McCann v. Clarke County*, 149 Iowa 13. If he has free and convenient access to his property and to the improvements thereon, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint. *Ridgway v. City of Osceola*, 139 Iowa 590. See *Louden v. Starr*, 171 Iowa 528.

As said in *Borghart v. City of Cedar Rapids*, 126 Iowa 313:

"The abutter has a right, in common with the community, to use the street from end to end for the purpose of passage; but, in addition to this common right, he has an individual property right, appendant to his premises in that part of the street which is necessary to free and convenient egress and ingress to his property. That this latter right is private and personal, and unshared by the community, and cannot be taken away without answering in damages, is held by substantially all the authorities."

There is no distinction between urban and rural realty in this respect, and it was so decided in *McCann v. Clarke County*, 149 Iowa 13, overruling *Brady v. Shinkle*, 40 Iowa 576. Nor is there distinction between such situations with respect to the right to other than reasonable and convenient

access to land in the country, and lots in a town or city. All to which either the lot owner or farm owner is entitled, is free and convenient access to his property from the street or highway; and if other access is denied him, by statute or other legal enactment, no right has been invaded. If the owner, in the improvement of his property, indicates the place of ingress and egress, this may be treated as such; and, if he has closed his land against entry at all other points, the inference is warranted that he does not intend, in the ordinary use of his land, to enter elsewhere than at the place by him chosen. In other words, the existence of a fence along the boundary between the highway and plaintiff's leased land, in the absence of anything to the contrary, evidences a purpose, on the part of those owning or in possession of the land, in its ordinary use, not to enter or to leave the farm where so fenced; and defendant had the right to take this into account in constructing and maintaining the telephone line. Section 2159 of the Code exacts that it should have been so done as not to incommode the public in the use of the road. What is meant by this statute is that the poles shall be such and so placed and the wires so strung as not to interfere with the safety and convenience of travelers making lawful use of the highway. Where the poles are to be placed, or what kind of poles shall be used, or at what height the wires shall be strung, is not specified in the statute, and all required is that ordinary care shall be exercised in so placing and constructing the line as not to interfere with the ordinary and usual use of the highway for other purposes. See *Snyder v. Fort Madison St. R. Co.*, 105 Iowa 284; Curtis on Law of Electricity, Section 487 *et seq.*

Usually there is not much travel near the fences along the boundaries of highways, and even when there is, injury is not likely from poles set close thereto or wires strung thereon; for those using the road ordinarily travel in the

direction the road runs, rather than transversely. Where there are entryways, however, the same use of the traveled portion of the road is to be anticipated, and it would seem that the wire should be approximately as high as though it were extended over the line of travel in the highway. In either situation, the owner of the telephone line is warned of the use likely to be made, and must place the wire at such a height as that it will clear all vehicles which in reasonable probability may be expected along the road. *Greenwood v. Eastern Oregon L. & P. Co.*, 67 Ore. 433 (146 Pac. 336); *Stuhr v. Wright County Tel. Co.*, 119 Minn. 508 (138 N. W. 693); Curtis on Law of Electricity, Section 495.

The wire must be high enough for the usual and ordinary travel on the highway—not for any and all travel (*Mayhew v. Yakima Power Co.*, 72 Wash. 431 [130 Pac. 485]); and this the traveler may assume without keeping a lookout for wire obstructions over the traveled way (*Jacks v. Reeves*, 78 Ark. 426 [95 S. W. 781], *Weaver v. Dawson County Mut. Tel. Co.*, 82 Neb. 696 [118 N. W. 650]). See *Little v. Central Dist. & Printing Tel. Co.*, 213 Pa. 229 (62 Atl. 848). If the line is seen, of course, ordinary care must be observed to avoid injury therefrom.

To exact as much where the line is along and close to the boundary fence, and not over the traveled portion of the highway, or place of ingress or egress of an abutting owner, would be absurd. For what conceivable purpose wires should be high enough at such a locality to clear derricks, threshing outfits, hay stackers, and the like, has not been pointed out by appellant, and cannot well be imagined. Nothing would be gained thereby; for, presumably, in view of the improvements on his land, the abutting owner will not enter or depart from his land at any such place, and others would not have the right so to do. The proprietor of a telephone line, in selecting and placing the poles and in determining the height of the wire, may take all this into

account, in determining how high the wire shall be strung; and if therein he exercise ordinary care,—that is, the degree of care a reasonably prudent man would exercise in a like situation,—he has done all the law exacts in the construction of a line so as not to incommode the public. Of course, the abutting owner, in the absence of restrictions at least, may pass in and out of his premises wherever he may choose; but this does not obviate the requirement that he exercise care in so doing. He is charged with knowledge that telephone lines may be constructed along the highway, and that all exacted of the owner thereof is that they be so constructed as not to incommode the public; and, as this is likely to be best accomplished by setting the poles near the highway boundaries, neither he nor anyone else may assume, in undertaking to pass through a fence into or from a field elsewhere than at a place of ingress and egress, that no telephone wire is stretched near the boundary, or that this has been done at any height from the ground other than reasonable safety requires. What this may be depends so largely on local conditions that no definite criterion is possible. All that may be assumed by the landowner, in entering through the boundary fence, is that the proprietor, in the construction and maintenance of the telephone line, has exercised that degree of care and foresight which an ordinarily prudent person would use in like circumstances, to protect the public, including abutting owners, from the dangers incident to the installation and maintenance of such lines in the highway; and one who, for any purpose, undertakes to pass to or from abutting land, is bound to no higher degree of care in so doing, than were he passing under wire intersecting the road or the entryway. The difference lies in the situations, and one or the other of these is to be taken into account in ascertaining whether the complainant had been ordinarily careful in the one situation or the other, as the case might be. In other words, in traveling

the road, or entryway, he may assume, in the absence of knowledge to the contrary, that the wire is beyond the reach of all ordinary vehicles of travel; for otherwise the line would not have been so constructed as not to incommode the public; and this is to be taken into consideration in determining whether he has been without fault: but, in undertaking to pass into or out of the premises, where fenced, and there is no entryway, the complainant may not assume that the wire is stretched at such height, or that it is higher than in that situation would be necessary, in view of the locality and the use of that portion of the highway reasonably probable, and this is to be taken into consideration in saying whether or not complainant in such a case has been at fault. This is precisely what the court told the jury, in terse but unmistakable language, in the instruction to which exception is taken, and it has our approval.

III. The suggestion that the instructions are conflicting is without foundation, and the criticism of the 13th instruction amounts to no more than insisting that the court erred in not enumerating different possible situations, in exacting a finding as to whether plaintiff was without fault. The instruction was correct, in so far as it went. Had a more specific instruction been desired, the defendant must have requested it. Arguments, as well as this opinion, have gone much beyond the objections submitted with showing in the motion for new trial; but, in view of a rehearing's having been granted, we have been inclined to a rather liberal construction of objections interposed to the end that the main question raised might be decided. The evidence sustains the verdict, and the judgment is— *Affirmed.*

GAYNOR, C. J., EVANS, SALINGER, and STEVENS, JJ., concur.

WEAVER and PRESTON, JJ., dissent.