O. A. LENDE, Appellant, v. JOHN B. FERGUSON, Appellee.

No. 46872.

JULY 29, 1946.

Griffin & Griffin, of Sioux City, for appellant.

Crary & Crary, of Sioux City, for appellee.

MULRONEY, J.—Plaintiff's petition, filed January 11, 1944, alleged that on August 20, 1935, he recovered a personal judgment against defendant in the District Court of Yellow Medicine County, Minnesota, in the sum of $1,215.50. An exemplified copy of the judgment was attached to and made a part of the petition and the prayer was for judgment for the amount of the Minnesota judgment, interest, and costs.

Defendant's answer admitted that plaintiff had obtained a judgment in the Minnesota court but defendant alleged that the judgment was for $855 and was recovered on August 20, 1928. He denied that any legal and valid judgment was obtained against him on August 20, 1935, and asserted that the original judgment had been "altered and changed without his knowledge or consent to read August 20, 1935," and since the judgment was in fact rendered on August 20, 1928, it

was barred by the statute of limitations of the State of Minnesota in that more than ten years had elapsed from August 20, 1928, to the commencement of this action. The answer further alleged that the judgment in Minnesota was, in March of 1929, applied as an offset or payment on another judgment in the sum of $2,555.80, in the same Minnesota court, against the plaintiff and in favor of the Canby Hereford Farms Company.

Plaintiff's reply denied the claim of offset and that the judgment was illegally or fraudulently entered and alleged that under section 9190 of Mason's Minnesota Code an action on a Minnesota judgment can be brought at any time within ten years of the entry of judgment; that the judgment sued on was not entered until August 20, 1935, but, under section 9394, Mason's Minnesota Code, there is no particular time within which judgments must be entered after a verdict.

Pursuant to a stipulation the case was tried in equity and is here de novo.

Plaintiff introduced a certified copy of the Minnesota judgment sued upon and rested. The judgment entry is dated August 20, 1935, and is in the sum of $1,215.50 and it appears to be entered upon a jury verdict rendered on June 20, 1928, in the sum of $850, to which sum interest to August 20, 1935, in the amount of $365.50 has been added.

The defendant then introduced Exhibit 1, which was a certified copy of a judgment obtained in the same Minnesota court against plaintiff by the Canby Hereford Farms Company. This judgment (which we will term the corporation judgment) is dated August 14, 1928, and is in the sum of $2,555.80. In connection with this judgment, defendant testified:

"In 1928 Mr. Harmon and myself were sole owners of the stock [in the corporation known as the Canby Hereford Farms Company] except one share owned by my wife. The corporation disposed of its assets, including this judgment Exhibit 1, to Mr. Harmon and myself and they were assigned to us. Later, about the latter part of 1928, Mr. Harmon transferred his interests to me, including the judgment Exhibit 1.

The judgment Exhibit 1 was assigned to Johnson & Schaefer for convenience in collecting, I think in June, 1928. They were attorneys, of Ivanhoe, Minnesota, who had represented myself and the corporation in this lawsuit in which the judgment was secured, and other actions.''

The defendant further testified that about the 17th of March 1929, he had occasion to go to Granite Falls, Minnesota, the county seat of Yellow Medicine county, and there he met his attorney, Mr. Johnson, in the clerk's office in the courthouse. He stated that they looked at the books and records in the clerk's office with reference to these two judgments and he saw the sheriff's report of a sale on execution on the corporation judgment, the sale having been on March 16, 1929, and he also saw at that time the book designated ''Judgment Docket'' and there he saw the judgment in the case of O. A. Lende v. John B. Ferguson et al. He testified that he recalled the date of the judgment entered against him and it was August 20, 1928; that he made a memorandum of the date and amount due on the judgment against him, figured to March 1, 1929, and it was $885.67, and a memorandum of the amount due on the corporation judgment and it was $2,639.29. At this point defendant's counsel made the following demand on plaintiff's counsel:

''Now, I ask you Mr. Griffin, to produce the original of the written agreement entered into between Mr. Ferguson and Mr. Lende, in the month of March, 1929, referring to and covering the matter of the offset of these two judgments. I will ask Mr. Griffin, as attorney for the plaintiff, to produce that original signed agreement at this time.''

To which demand counsel for plaintiff replied:

''The plaintiff claims that there never was any such agreement made and we have no copy to produce.''

Defendant thereupon introduced Exhibit 2, an unsigned paper, as follows:

''It is agreed between J. B. Ferguson and O. A. Lende as follows:

"Whereas judgment was entered in the District Court of Yellow Medicine County, Minnesota against O. A. Lende, et al., defendants, on the 14th day of August, 1928, for the sum of $2,555.80 in favor of Canby Hereford Farms Company of which company and judgment J. B. Ferguson is sole owner and,

"Whereas said judgment was assigned to Johnson and Schaefer, attorneys for J. B. Ferguson, for purposes of collection only, and

"Whereas the said O. A. Lende obtained a judgment in said court against John B. Ferguson, et al., which was entered on the 20th day of August, 1928, for the sum of $858.50.

"It is therefore agreed by and between said J. (John) B. Ferguson and said O. A. Lende that the last above described judgment shall be credited on or set off against the judgment first herein above described by applying it in part payment thereof, and the said O. A. Lende shall be credited on said first described judgment with the sum of $1339.20 arising from sale on execution under said judgment of the NW¼ of Section 20, in Township 108, Range 39, Murray County Minnesota which premises said O. A. Lende is to convey by Quitclaim Deed to Johnson and Schaefer for the benefit of said J. B. Ferguson.

"In consideration of the said premises, O. A. Lende and J. B. Ferguson are each to be released from the said respective judgments.

"J. B. Ferguson hereby authorizes his said attorneys to fully carry out the terms of this agreement.

"Dated this ...... day of March, 1929.

.............................
...........................''

Defendant then testified that his attorney, Mr. Johnson, had two other duplicate copies of Exhibit 2 when they were together in the clerk's office in Granite Falls on March 17, 1929, and they were both signed by O. A. Lende. He stated that he was very familiar with Lende's signature and that he read over Exhibit 2 and signed "either one or two of them, whichever was signed by Mr. Lende." He stated that

he did not have the signed originals. On cross-examination he stated that he did not get a signed copy of this agreement and he did not get "anything in the way of a release of the judgment." He could not recall that the signed copy of Exhibit 2 was handed to the clerk. He stated: "My attorney, Mr. Johnson, handled the agreement. * * * I left it with my attorney, Mr. Johnson."

The clerk of court of Yellow Medicine county testified for plaintiff in rebuttal and stated that on August 19, 1935, he received a letter from Mr. Lende asking him to enter judgment in the case of Lende v. Ferguson; that there was no judgment entered prior to that time; and pursuant to the instructions he entered judgment which bears his signature as of August 20, 1935. He testified from the judgment docket books and judgment record books for the years 1928 to 1935. He testified that the judgment docket (where defendant stated he had seen the judgment in the case of O. A. Lende v. Ferguson, dated August 20, 1928) contained no entry of any judgment in the month of August 1928, and neither the judgment docket books nor the judgment record books contained any entry or record of a judgment in the Lende v. Ferguson case prior to August 20, 1935. He stated that there was no other book in his office that Mr. Ferguson could have referred to and found the entry of judgment. The clerk had another book with him called "Register of Actions," wherein there are listed all papers filed in an action. In this book, with reference to the case of Lende v. Ferguson, there is listed the filing of a number of papers in 1928 and the last entry is the judgment roll in 1935, and the "35" appears to be written over some other figure that looks like "28." With reference to this, the clerk testified:

"I made that change. It is in my handwriting. I don't remember whether I inadvertently copied '1928,' the date above, or whether I had put in some other date, but this is in my handwriting and was made August 20, 1935."

The clerk testified that under the Minnesota procedure the judgment is not entered automatically after a jury verdict but the clerk waits until a request for judgment is made

by one of the litigants or an attorney in the case. The clerk also had the records concerning the corporation judgment against Lende and these records, introduced without objection, show the assignment of this judgment to Johnson & Schaefer on June 28, 1928, "as collateral to and security for * * * claims for fees, costs and expenses," and the subsequent sale of the judgment at sheriff's sale on September 5, 1928, "to satisfy a pledge," wherein all the right and title of the Canby Hereford Farms Company in and to its claim and verdict in the case of said corporation against O. A. Lende and I. J. Sawell was sold at sheriff's sale to Johnson & Schaefer. The records show a release of this judgment to Lende filed June 19, 1929, executed by Johnson & Schaefer. The release saves the lien of the judgment as against certain land in Murray County, Minnesota, and recites that this land has been conveyed by quitclaim deed to Johnson & Schaefer by Lende. Other exhibits indicate that this Murray county land is the land which was levied upon March 16, 1929.

The plaintiff testified that he is a practicing attorney in Granite Falls, Minnesota; that he owned the judgment against Ferguson; that he had never seen or heard of Exhibit 2 prior to coming into court, and he stated:

"I never had any written agreement with Mr. Ferguson regarding this judgment, nor with Mr. Johnson. I never had any agreement of any kind with anyone regarding the settlement of this judgment now sued upon. There was a judgment recovered against me by Hereford Farms Company. I have settled that judgment with L. P. Johnson, who was counsel for J. B. Ferguson and for Canby Hereford Farms Company. Johnson & Schaefer had an assignment of that judgment and I learned that they had foreclosed that assignment and sold it as a pledge and the records showed that they were the owners of that judgment. * * * I gave Johnson & Schaefer a quitclaim to the farm. It was 160 acres in Murray County, Minnesota. I also paid Johnson & Schaefer $100 cash, and received the satisfaction of the judgment, which is Exhibit 'F' in this case. It is signed by both Johnson and Schaefer and at that time I gave them a quitclaim deed. There was never

anything said at that time about the judgment I had against John B. Ferguson. I filed Exhibit 'F' with the clerk of the court. There was nothing of record in the clerk's office to show that Ferguson still owned the judgment at that time. I had a verdict against him at that time but didn't have a judgment yet. * * * I am positive that nothing was said about including the judgment now sued upon as part of the settlement. I have correspondence with Johnson verifying these things."

Upon this record the trial court held, "that there was an agreement between the parties, entered into prior to the satisfaction of the $2,555.80 [corporation] judgment against plaintiff, that in consideration of said satisfaction of said judgment, the plaintiff should satisfy the judgment here in suit." The court found that plaintiff's judgment had been fully paid and judgment for the defendant dismissing the action was entered. Plaintiff argues on this appeal (1) that the judgment of the district court of Minnesota was a valid subsisting judgment at the time sued upon, not outlawed, and is entitled to full faith and credit in Iowa, and (2) the preponderance of the evidence is against the contention of the defendant that the judgment sued upon has been offset or paid and satisfied.

I. The question whether the judgment was valid depends upon the laws of Minnesota. Section 541.04, Minnesota Statutes (9190, Mason's), provides that an action upon a judgment must be brought within ten years after the entry thereof. See, also, Gaines v. Grunewald, 102 Minn. 245, 113 N. W. 450. Section 548.03, Statutes of Minnesota (9394, Mason's), provides that the clerk shall enter the judgment but the statute does not prescribe any certain time within which it must be entered after a verdict. The prevailing party may cause judgment to be entered without notice. Wilcox v. Hedwall, 186 Minn. 504, 243 N. W. 709.

The trial court, in the first paragraph of its judgment and decree, held:

"On August 20, 1935, plaintiff herein procured a judgment in a district court of the State of Minnesota against

defendant for $1,215.50. Said judgment was entered by the clerk of said court on said date at the request of plaintiff on a verdict of a jury which had been returned in plaintiff's favor on June 20, 1928, in the sum of $850. The entry of judgment by the clerk at the plaintiff's request was in accordance with the rules of practice in the State of Minnesota."

Apparently the trial court did not believe the defendant's testimony to the effect that the judgment was actually entered August 20, 1928. We agree with its conclusion in this regard. Since the action was brought within ten years after the judgment entry date of August 20, 1935, it was not barred.

II. Defendant pleaded that the judgment was offset against the corporation judgment. The burden of proof was on the defendant to establish this defense by a preponderance of the evidence. He was the only witness in his behalf. He did not testify that he himself ever had any negotiations with Lende with respect to the alleged settlement and offset. His testimony is that there was a written agreement negotiated by his attorney and signed by himself and Lende in the month of March 1929, referring to and covering the matter of the offset of these two judgments. After such testimony it became incumbent upon defendant to prove this written agreement. In the matter of proof he was subject to the so-called best-evidence rule. The rule is thus stated in 20 Am. Jur. 364, section 403:

"It is an elementary principle of the law of evidence that the best evidence of which the case in its nature is susceptible and which is within the power of the party to produce, or is capable of being produced, must always be adduced in proof of every disputed fact. Secondary evidence is never admissible unless it is made manifest that the primary evidence is unavailable, as where it is shown that it has been lost or destroyed, is beyond the jurisdiction of the court, or. is in the hands of the opposite party who, on due notice, fails to produce it."

In Williams v. Heath, 22 Iowa 519, 521, we stated:

"The rule requiring the production of the best evidence of which the fact to be established is susceptible, is well understood. It is needless to enlarge upon its great importance. No rule is more deeply radicated in the law of evidence, than the one which declares 'that no evidence shall be received which is merely substitutionary in its nature, so long as original evidence can be had.'"

■ Defendant did not introduce the original signed agreement. He made a demand on plaintiff to produce the "original of the written agreement entered into between Mr. Ferguson and Mr. Lende in the month of March, 1929, referring to and covering the matter of the offset of these two judgments." But there was no testimony that plaintiff had ever had possession of such an original agreement. His demand was met by the statement from plaintiff's counsel that it was plaintiff's claim that "there never was any such agreement made." The demand to produce a writing, not shown to have ever been in the adversary's possession, does not warrant the introduction of secondary evidence of its contents.

The only other theory on which secondary evidence of the written agreement would be admissible would be that the original was lost, or destroyed or beyond the power of the defendant to produce. It was incumbent upon defendant to introduce proof of the loss, destruction, or unavailability of the original writing as a basis for the introduction of the secondary evidence as to its contents.

In Olson v. New York Life Ins. Co., 229 Iowa 1073, 1077, 295 N. W. 833, 835, we held the court rightly excluded a purported photostatic copy of a proof of death because, "No attempt was made to excuse the nonproduction of the original * * *." See, also, Sternburg v. Callanan, 14 Iowa 251; Citizens' Bank v. Rhutasel, 67 Iowa 316, 25 N. W. 261; Merrill v. Timbrell, 123 Iowa 375, 98 N. W. 879; Buckley v. Ebendorf, 204 Iowa 896, 216 N. W. 20.

There was absolutely no testimony as to the loss or destruction of the alleged written agreement. Defendant did not testify that the alleged original agreement was lost or that it was destroyed or that it was impossible for him to produce

it. His testimony is that he did not receive a signed copy from his own attorney but that such a signed copy was in his attorney's hands when he first saw it and after he signed it he left it with his attorney. For aught that was shown by defendant's testimony the original agreement might still be in the hands of his attorney, Mr. Johnson. His testimony is that there were two signed copies, or what might be called duplicate originals, of this written agreement, and his lawyer had the last custody of the alleged written agreement. He stated: "I left it [the alleged written agreement] with my attorney, Mr. Johnson." He does not state that he ever made any effort to secure the original from his lawyer.

One who desires to resort to secondary evidence must first lay the foundation for its admission. He must show that the primary evidence is unavailable to him. We need not decide as to the quantum of proof that will suffice to establish the foundation. In Wilson v. Davis, 110 Mont. 356, 363, 103 P. 2d 149, 153, the Montana Supreme Court stated:

"This court, in the case of St. Martin State Bank v. Steffes, 88 Mont. 85, 88, 290 Pac. 259, has said that the evidence of the former existence, execution, delivery, loss and contents of a lost instrument should be clear and convincing."

In our opinion in Sternburg v. Callanan, supra, 14 Iowa 251, 255, we commented:

"It is not made to appear beyond question that the original was lost, or that it could not be obtained."

Perhaps, as stated in 20 Am. Jur. 392, section 440, the precise quantum of proof to establish the fact that the primary evidence is unavailable is "not susceptible of a general rule applicable to all situations that may arise." Certain it is that there must be some evidence which has a logical tendency to establish the fact that the primary evidence is unavailable. Under the record in this case, where custody of the primary evidence is traced to defendant's own counsel and no reason or explanation given for its nonproduction, there was no evidence that had a logical tendency to establish the fact of un-

availability. The natural inference is that a client's contract in the hands of his lawyer is available to the client.

III. The record shows that when Exhibit 2 was offered in evidence during defendant's direct examination, plaintiff's counsel objected to it "as incompetent, irrelevant, and immaterial, purely self-serving, and not in any way binding on plaintiff." The court then stated: "Ruling will be reserved." The last part of the objection would not raise the question of best evidence. Ordinarily, when an objection is made to the introduction of testimony on the ground that it is incompetent, counsel making the objection should point out in what particular or particulars the evidence sought to be elicited is objectionable, and unless this is done we have held that it does not constitute a proper basis for a reversal. Floy v. Hibbard, 227 Iowa 149, 287 N. W. 829; O'Hagan v. Clinesmith, 24 Iowa 249; Evers v. Flindt, 193 Iowa 557, 187 N. W. 484; In re Estate of Hoyt, 180 Iowa 1250, 163 N. W. 430; Coad v. Schaap, 144 Iowa 240, 122 N. W. 900; and Neel v. Smith. Iowa, 147 N. W. 183. In Floy v. Hibbard, supra, 227 Iowa 149, 151, 287 N. W. 829, 830, we stated:

"The reason for this rule is that, in fairness to the trial court, he should know upon what the objector relies and be given an opportunity to pass upon the same. However, this general objection is sufficient where the grounds of the objection are discernible, International Harvester Co. v. C., M. & St. P. Ry. Co., 186 Iowa 86, 172 N. W. 471, or where the evidence to which the objection is made could not have been made competent."

The record shows that at the time Exhibit 2 was offered there was no testimony about what was done with the original. The cross-examination by plaintiff's counsel did not touch Exhibit 2 but after the cross-examination the court interrogated the defendant as follows:

"The Court: I would like to ask a question or two about this memorandum agreement, Exhibit 2. If I understood you, you testified that you found, or there was in the clerk's office an original, of which this is perhaps a copy, and that

it bore the signature of Mr. Lende? A. Yes, Mr. Johnson, my attorney, had this agreement signed; and it was in the clerk's office where we met; and I don't know, from the records— Q. By the Court: It was just Mr. Lende's signature and not signed by anybody else, is that right?· A. Not then.''

Upon redirect examination the defendant testified that before he left he signed the contract. Whereupon the court asked the defendant if he left it (the original signed contract) in the clerk's office and the defendant, replying to the court's inquiry, stated:

''I left it with my attorney, Mr. Johnson. That was in the clerk's office. They weren't handed to the clerk that I recall. Mr. Johnson said he would take care of it.''

We think under the entire record the general objection of incompetency was sufficient. When the objection on the ground of incompetency was made the court reserved ruling. The record rather indicates the court was waiting for testimony concerning the original before it ruled on the admissibility of the copy, Exhibit 2. The cross-examination by plaintiff's counsel did not bring forth any testimony concerning the original.

When the cross-examination ended there was no testimony concerning what was done with the original. Such testimony, as we have pointed out, would be important on the question of admissibility of the copy under the best-evidence rule. It was at this point that the court interrogated the defendant and in the course of its examination the court inquired as to what was done with the original of which Exhibit 2 was a copy. The inquiry indicates that the court was searching for the foundation evidence with respect to the original, upon which a reserved decision as to the admissibility of the copy would depend. It seems clear that the court knew the particular ground of the general objection. The reason for the.rule that counsel should point out the particular ground is, as stated in Floy v. Hibbard, supra, that the court be given an opportunity to pass upon the particular ground upon which a general objection is based. The failure to point out to the court a particular ground upon which a general objection should

be based is immaterial when it is apparent that the court did consider and pass on the particular ground. This record shows that the particular ground was obvious to the court. Its inquiry as to what was done with the original after it was signed would bring forth the necessary foundation evidence under the best-evidence rule or it would bring forth the lack of such evidence. It brought forth the latter. When the defense rested after defendant left the witness stand the objection to Exhibit 2 should have been sustained. It is evident from the court's decree that Exhibit 2 was accepted by the trial court as evidence of the alleged written agreement. In fact, it was the only proof offered of any agreement of offset. The exhibit with signature names omitted would not be competent evidence under our ruling in Fidelity Deposit Company v. Ryan, 225 Iowa 1260, 1261, 282 N. W. 721. There, in a suit to recover on a fidelity bond, we stated:

"* * * the plaintiff offered in evidence what purported to be a certified copy of the bond but, on cross-examination, it developed that the copy sought to be introduced contained no signatures and, hence, was not a genuine or true copy of the original. Aside from the question of whether the showing was sufficient to permit the introduction of a certified copy, a matter which we do not pass upon, it was certainly improper to admit in evidence, over proper objections of the defendant, an instrument containing no signatures and which was admittedly not a true and genuine copy of the original."

In any event, the exhibit was not admissible as secondary proof of the alleged written agreement under the record in this case because of the failure to prove the loss, destruction, or unavailability of the original. With this evidence ruled out of the case there was no proof whatever of the agreement to offset the judgment against defendant against the corporation judgment against the plaintiff.

IV. Certain other testimony gives strength to the plaintiff's rebuttal testimony to the effect that no such written agreement was ever entered into. Defendant testified he examined the record as to the corporation judgment on March 17, 1929. The records show that Johnson & Schaefer were

752

the absolute owners of the corporation judgment against plaintiff in March of 1929 and, so far as the record is concerned, there is nothing to indicate defendant had any interest in this judgment at the time he claims the written offset agreement was entered into. It is difficult to understand how he could enter into an agreement that a judgment against him could be applied as an offset on another judgment he did not own. Exhibit 2 states that the judgment of the corporation against plaintiff had been assigned to Johnson & Schaefer "for purposes of collection only." The written assignment filed in the case showed the assignment to be for security for several claims for fees, costs, and expenses.

Exhibit 2 describes the execution sale of the Murray county land and the credit obtained therefrom. Defendant testified that this was obtained from the records in the clerk's office when he met Johnson there on March 17, 1929. As a matter of fact, the record of this Murray county sale was not filed in the clerk's office of Yellow Medicine county until March 28, 1929.

For the reasons stated, the judgment of the trial court is reversed and the case is remanded for judgment for plaintiff as prayed in plaintiff's petition.—Reversed and remanded.

All JUSTICES concur.