Ruby Scott Linge et al., executors and trustees under Last Will and Testament of Carl K. Linge, deceased, appellants, v. Iowa State Highway Commission, appellee.

No. 52373.

(Reported in 150 N.W.2d 642)

1228

MAY 2, 1967.

REHEARING DENIED AUGUST 30, 1967.

Nolan, Lucas & Nolan, of Iowa City, for appellants.

Fisher & Pickens, of Cedar Rapids, and Raymond Walton, Special Assistant Attorney General, of Ames, for appellee.

GARFIELD, C. J.—Plaintiffs David E. Linge and the executors and trustees of his deceased father's estate appealed to the district court from the assessment of damages by condemnation commissioners for the taking of 4.8 acres of plaintiffs' land and certain rights of access thereto from primary highway 149. From the award based on the jury verdict in the district court plaintiffs have appealed to us.

Three errors in admission of evidence are assigned. We hold plaintiffs are not entitled to a reversal by reason of them.

I. On June 2, 1959, plaintiffs purchased the west half of a certain quarter section of farmland at the southwest edge of Cedar Rapids. (For convenience we disregard the death of David E. Linge's father and substitution of his executors as plaintiffs.) Paved primary highway 149 runs diagonally from southwest to northeast across the tract. Aside from the highway there were 74.65 acres. The land has never been used for anything but farming. Improvements were of little value.

On February 28, 1963, defendant state highway commission took five feet of plaintiffs' land along the south side of highway 149 and 115 feet along the north, in order to widen it into a divided highway, with two lanes for travel in each direction. The notice of condemnation provided that all rights of direct access between the highway and the land were also condemned except the two entrances on each side of the highway and, if the property should be developed for other than agricultural purposes, these four entrances would be at slightly different locations. Only the four existing field entrances from the highway have ever been used.

The record and plaintiffs' brief show the six commissioners appointed by the writer to assess the damages from the taking as provided by section 472.6, Code 1962, fixed them at $10,800. Trial of plaintiffs' appeal to the district court from this award resulted in a jury verdict of $10,500, the amount one of defendant's value witnesses fixed, and $900 more than its other value witness fixed as the difference in values before and after the taking.

Plaintiffs used one value witness in addition to plaintiff Linge. The witness said the market value of the property before the taking was $2000 an acre or $149,300 "and after the taking it was $1655 an acre, or $115,600, or a difference of $68,000". Assuming this expert's before-and-after values were correct, the difference testified to by him is about twice what it should be.

Plaintiff Linge's testimony is that just before the taking of the 4.8 acres and rights of direct access to 149, the fair market value of the property was $150,000 and after the taking it was $75,000.

Three years and nine months before the condemnation plaintiffs paid $94,425 for the entire tract. This, according to Mr. Linge, was $1250 per acre for the land north of highway 149 and $1000 per acre for the land on the south.

The primary purpose for which plaintiffs bought the tract, according to the witness David E. Linge, was for a cemetery but permission for such use was denied by county zoning authorities. Plaintiffs then considered subdividing the tract for residence lots. When the city limits were extended to include the land it was automatically zoned R-1 for residential use.

II. Plaintiffs first assign error in the admission in evidence of an ordinance passed and approved by the City of Cedar Rapids on February 26, 1962 (a year before this condemnation), establishing access control on the portions of three primary highways within the city, including 149. The ordinance (Exhibit B) recites it was passed pursuant to agreement in resolutions of the city council adopted July 11, 1957, and it shall be deemed an exercise of the police power under what is now chapter 306A, Codes 1962, 1966.

The ordinance further provides:

"Section 6. Presently existing access rights will not be destroyed except by gift, purchase or appropriate condemnation proceedings thereof. However, such access rights shall be subject to such regulations in the interest of public welfare and safety as the City and Iowa State Highway Commission may agree upon, provided that no additional access ways shall be permitted by the City without the consent and approval of the Iowa State Highway Commission.

"Section 7. The Iowa State Highway Commission shall be authorized to acquire right-of-way and access rights by gift, purchase or condemnation on the above described length of roadway."

III. Before objecting to admission of the ordinance plaintiffs' counsel was permitted to examine at some length the director of public works for the city by whom the exhibit was identified. Plaintiffs then objected to the offer as incompetent and immaterial to any issue in the case, no proper showing it had been legally passed, it contained self-serving matters, and the only right the city had to control access would be in conjunction with defendant-commission.

There is sufficient evidence the ordinance was legally adopted and this ground of the objection seems not to be relied upon here. Ground of the objection that it was self-serving added nothing thereto. Bass v. Muenchow, 259 Iowa 1010, 146 N.W.2d 923, 925, and citations.

It may be taken as true that the only right a city has to control access to primary highways within its corporate limits is in cooperation with defendant-commission. Code section 306 A.3; Gardner v. Charles City, 259 Iowa 506, 144 N.W.2d 915, 917–919. However, as we shall attempt to point out, this affords insufficient basis for excluding the ordinance from evidence.

Concerning an objection to an exhibit "as incompetent, irrelevant and immaterial, purely self-serving, and not in any way binding on plaintiff", Lende v. Ferguson, 237 Iowa 738, 749, 23 N.W.2d 824, 830, cites several Iowa cases for this: "Ordinarily, when an objection is made to the introduction of testimony on the ground that it is incompetent, counsel making the objection should point out in what particular or particulars

the evidence * * * is objectionable, and unless this is done we have held that it does not constitute a proper basis for a reversal."

■ Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1263, 30 N.W.2d 97, 103, states the same rule, pointing out that the general objection is sufficient where the grounds of incompetency are obvious. Among later decisions to like effect are Ferris v. Riley, 251 Iowa 400, 408, 101 N.W.2d 176, 180, 181; Wickman v. Illinois Cent. R. Co., 253 Iowa 912, 921, 114 N.W.2d 627, 632; McCrady v. Sino, 254 Iowa 856, 862, 863, 118 N.W.2d 592, 595, 596; Spry v. Lamont, 257 Iowa 321, 335, 132 N.W.2d 446, 454. See also I Wigmore on Evidence, Third Ed., section 18, pages 332–338.

■ Grounds of objection raised for the first time in the motion for new trial and on appeal are not timely and will not be considered here. See authorities supra, also Lowman v. Kuecker, 246 Iowa 1227, 1230, 1231, 71 N.W.2d 586, 588, 589, 52 A. L. R.2d 1380; Berg v. Ridgway, 258 Iowa 640, 140 N.W.2d 95, 98, 99.

■ "It is also thoroughly established that a motion to strike made at the close of evidence * * * based upon grounds not included in objections made, is too late and should be denied." (Citations) Ferris v. Riley, supra, 251 Iowa 400, 407, 101 N.W. 2d 176, 180.

■ The principal complaint plaintiffs make against the ordinance here seems to be that it violates constitutional prohibitions against the taking of property without compensation. No such ground was asserted in plaintiffs' objection to the offer of the exhibit and plaintiffs are not entitled to have the complaint considered here.

IV. Aside from what is just said, the main basis for plaintiffs' belated claim of unconstitutionality of the ordinance is the insistence of their counsel in argument, notwithstanding our decisions and the prevailing rule elsewhere are to the contrary, that plaintiffs have a constitutional right to direct access to highway 149 at any and all points and any interference therewith without compensation is an unconstitutional taking of their property. Specifically the argument is that plaintiffs have a

constitutional right to direct access to highway 149 from each lot they contemplate platting which may abut 149.

The only authority cited in their opening brief on this point is Jones v. Iowa State Highway Comm., 259 Iowa 616, 144 N.W.2d 277, and the dissenting opinion in Lehman v. Iowa State Highway Comm., 251 Iowa 77, 99 N.W.2d 404. Their argument asserts the Jones opinion is not sound or good law and the holdings in Iowa State Highway Comm. v. Smith, 248 Iowa 869, 875, 82 N.W.2d 755, 759, 73 A. L. R.2d 680; Warren v. Iowa State Highway Comm., 250 Iowa 473, 93 N.W.2d 60, and the Lehman case are erroneous. The only one of these opinions that receives approval is the dissent in Lehman. To the Smith, Warren, Lehman and Jones cases, supra, there might be added Wegner v. Kelley (Ladd, J.), 182 Iowa 259, 265, 165 N.W. 449; Wilson v. Iowa State Highway Comm. (Oliver, J.), 249 Iowa 994, 90 N.W.2d 161; Belle v. Iowa State Highway Comm., 256 Iowa 43, 52–54, 126 N.W.2d 311, 316, 317; Fort Dodge, D. M. & So. Ry. v. American etc. Corp., 256 Iowa 1344, 1354, 131 N.W.2d 515, 522.

There is no dissent to the Smith, Wilson, Warren or Jones opinions, supra.

In view of plaintiffs' insistence they have a right of access from their land to highway 149 at any and all points, it may be well to quote the rule from the Smith opinion, supra, to which we are firmly committed (pages 875, 877 of 248 Iowa, page 759 of 82 N.W.2d):

"It seems fairly well settled that, while access may not be entirely cut off, an owner is not entitled, as against the public, to access to his land at all points between it and the highway. If he has free and convenient access to his property and the improvements on it and his means of ingress and egress are not substantially interfered with by the public he has no cause for complaint. [citations] * * *

"No hard and fast rule can be stated as to whether an abutting property owner has been denied access that is reasonable or, as we have said, 'free and convenient.' In most instances the question is one of fact, not of law, and its determination depends largely upon the evidence in the particular case." (Citations)

So in the present case, plaintiffs were entitled to be compensated for any denial of reasonable access to their tract or any substantial interference therewith caused by the condemnation of rights of access in addition to the four existing entrances which were allowed them. The trial court so instructed the jury in language taken from our opinions. Plaintiffs made no objection to this or any other jury instruction.

This record shows no indication defendant or the trial court took the position plaintiffs may be denied reasonable access to their property or, as we have said, access that is "free and convenient", without just compensation. They did, and properly so, refuse to accept plaintiffs' argument that a landowner has a right of access to his land at any and all points and must be compensated for any interference therewith.

Defendant also had a right to contend and offer evidence in support, that the four existing entrances to highway 149 and entrances onto Wilson Avenue which ran along the entire north side of the tract were reasonably adequate and no others were required.

The ordinance itself provides:

"Section 6. Presently existing access rights will not be destroyed except by gift, purchase or appropriate condemnation proceedings thereof. * * *

"Section 7. The Iowa State Highway Commission shall be authorized to acquire right-of-way and access rights by gift, purchase or condemnation * * *."

The limitation in section 6 to "Presently existing access rights" is proper. Denial of rights of access where none previously existed is not compensable. Lehman v. Iowa State Highway Comm., supra, 251 Iowa 77, 82, 83, 99 N.W.2d 404, 406, 407, and numerous citations; Annotation, 43 A. L. R.2d 1072, 1079; Note 43 Iowa Law Review 258, 267.

The provision of section 7 of the ordinance authorizing the highway commission to condemn rights of access conferred no right upon the commission it did not already have. Iowa State Highway Comm. v. Smith, supra, 248 Iowa 869, 877, 878, 82 N.W.2d 755, 760, 73 A. L. R.2d 680, and citations.

 The statement in the notice of condemnation referred to in Division I, supra, that rights of direct access to 149 other than the entrances then in existence were condemned did not compel the State to pay for nonexistent access rights. Lehman case, supra, at page 84 of 251 Iowa, pages 407, 408 of 99 N.W.2d.

 V. Plaintiffs, particularly in their reply, argue the ordinance would lead the jury to believe the city had already limited their right of access to 149 and defendant was thus not required to pay therefor.

As stated, the ordinance was adopted February 26, 1962. The highway commission designated highway 149 a controlled-access thoroughfare in 1958, a year before plaintiffs acquired the tract and before it was annexed by the city. Plaintiffs' brief and argument acknowledges this. It states: "The record shows highway 149 was designated a controlled-access highway by the Highway Commission in 1958, some four years prior to the enactment of the city ordinance."

In Jones v. Iowa State Highway Commission, supra, 259 Iowa 616, 144 N.W.2d 277, the record also showed such designation of 149 by the commission in 1958.

It is not suggested the highway commission did not then have the power to designate 149 a controlled-access highway. Section 306A.3, Codes 1958, 1962, expressly confers such power, either alone or in cooperation with cities and towns as to highways within their corporate limits. The designation by the commission legally constituted 149 a controlled-access highway back in 1958. The ordinance adds nothing in the matter of access control to what defendant itself accomplished four years earlier.

Further, as explained in Division IV hereof, the trial court instructed the jury, in language taken from our opinions and to which plaintiffs made no objection, they were entitled to compensation for any denial of reasonable access or substantial interference therewith resulting from the condemnation.

In Interstate Finance Corp. v. Iowa City, 260 Iowa 270, 277, 149 N.W.2d 308, 313, it was claimed improperly admitted evidence in a condemnation appeal called for a reversal. In rejecting the contention we said:

■ "We have frequently said that if the trial court erroneously admits testimony the error may be removed by proper instructions and thus rendered harmless and not prejudicial. [citations]

"* * * Assuming, arguendo, the trial court erred in permitting this evidence, we are satisfied it was cured by the trial court's instructions. We must assume the jury followed the instructions and no prejudice to defendant resulted."

■ VI. There is still another reason why admission of the ordinance was not prejudicial. The director of public works for the city testified regarding the ordinance, before it was offered in evidence and without objection from plaintiffs, "It's an ordinance passed by the city establishing control access facilities on all state highways within the corporate limits of the city, including Highway 149."

Plaintiffs themselves showed by their witness Hall who prepared preliminary plats of subdivisions on their land "there was an ordinance passed by the city that it could require a 50 foot access road on either side of a major street." There is other similar testimony.

It is elementary that admission of evidence is not prejudicial error where substantially the same evidence is in the record without objection. Reed v. Bunger, 255 Iowa 322, 334, 335, 122 N.W.2d 290, 298; Wickman v. Illinois Cent. R. Co., supra, 253 Iowa 912, 920, 921, 114 N.W.2d 627, 632, and citations; Ver Steegh v. Flaugh, 251 Iowa 1011, 1020, 103 N.W.2d 718, 723, 724, and citations.

VII. As plaintiffs' motion for new trial in effect asserts, the validity of this ordinance is not properly an issue in this action to which the city is not a party. It would seem plaintiffs are attempting to make an unallowable collateral attack upon the ordinance.

Nevertheless we may observe there appears to be no good reason why the ordinance is not valid. It was adopted pursuant to authority Code chapter 306A expressly confers. Gardner v. Charles City, supra, 259 Iowa 506, 144 N.W.2d 915, 917, 918, recognizes the validity of such an ordinance.

However if it be assumed for present purposes the ordinance is invalid, we think it was still properly admitted in evidence over the objection made at the time it was offered.

Assuming there was no condemnation in 1963 and plaintiffs were negotiating with a willing buyer for sale and purchase of their property, the existence of this ordinance designating old 149 a controlled-access highway, even though invalid, might well influence the sale and affect the price the purchaser would be willing to pay. Like plaintiffs, we are aware of no way to have the ordinance declared invalid except in a direct proceeding for that purpose to which the city would be a party. A purchaser might well be slower to purchase under these circumstances or to pay as much as if the ordinance were nonexistent. See in this connection County of Los Angeles v. Faus, Cal. App., 304 P.2d 257, 264, 265.

VIII. Plaintiffs' second assigned error is in permitting Cedar Rapids City Engineer Jensen to testify, over their objection as immaterial, indefinite and incompetent, that recent plats of subdivisions for residence purposes showing multiple access onto major streets and highways have not been approved where it is feasible to make other arrangements for such access. We are clear the overruling of this objection presents no reversible error under this record.

What is said in Division III, supra, as to the insufficiency of a general objection also finds application here.

After their appeal to the district court had been pending more than two years plaintiffs employed Mr. Hall, an engineer-surveyor, to prepare preliminary plats of subdivisions which might be laid out on their land. One of these, exhibit 6, shows a driveway from each of 12 lots directly onto highway 149 within a space of 800 feet.

The city engineer's testimony adds little, if anything, to much other evidence received without objection. Plaintiffs' first witness was defendant's resident engineer. He gave this testimony, more inclusive in some respects than that referred to in this assigned error: "I have never seen a plat approved that would run some 12 driveways within an area of 800 feet onto a

main thoroughfare in a city. That would not be good planning and good platting."

Plaintiffs' second witness was Mr. Hall who prepared exhibit 6. He said he had prepared many plats of subdivisions in Cedar Rapids over a period of 11 years. He also testified: "There is no major street where we put in 12 driveways in a space of 800 feet in Cedar Rapids. * * * what the city might require with reference to such a plat is speculative at this time."

Mr. Pickard, plaintiffs' only value witness other than Mr. Linge, testified he would not plat lots, even before this condemnation, so the houses would face highway 149 because it would be better platting to back the houses up to the highway and establish what would amount to a frontage road back far enough so houses could front on both sides thereof.

Defendant's first witness was the director of public works for the city for ten years. He explained that applications for openings onto city streets were first referred to him, then to the city engineer, then to the traffic engineer. The applications, with recommendations of these three officials, then went to the city council for final action.

This witness gave substantially the same testimony the city engineer later gave: "We have not accepted plats, not to my knowledge, that have numbers of lots in the area substantial as this with driveways onto a major street such as shown on exhibit 6. I have not recommended that any be accepted." The witness went on to explain without objection that "we" would recommend having newly platted lots back up to a major street or highway rather than face it, with access onto it at intersections. "I would recommend four, not over six, entrances from such a subdivision on 149."

Engineer Jensen testified without objection: "I would not approve the plan exhibit 6 if Mr. Hall put a driveway on lots 10 through 17 as he has on the exhibit. * * * I would not approve under any circumstances multiple accesses up and down highway 149 on the Linge property as it existed before this taking."

On cross-examination by plaintiffs, Mr. Jensen explained that "we" try to work with subdivision developers to make the

most logical use of the property from an esthetic and economic standpoint; instead of arbitrarily saying you cannot go onto the street here or there or somewhere else, "we" try to work out a reasonable and logical plan, taking into consideration that desirable new housing adds to the community, and also consider traffic and things of that character. "Each case is determined on its own merits."

We have not attempted to summarize all the testimony we think renders receipt of the evidence referred to at the beginning of this Division (VIII) nonprejudicial. See authorities at the end of Division VI, supra; Iowa Development Co. v. Iowa State Highway Comm., 252 Iowa 978, 989, 108 N.W.2d 487, 494, and citations.

Aside from the above procedural considerations, we think it cannot be said as a matter of law that a prospective purchaser of plaintiffs' property would not want to consider whether recent plats of residential subdivisions showing multiple access onto major streets and highways have been approved, where it is feasible to make other arrangements for such access. The last paragraph of Division VII, supra, is applicable here.

 Both parties to a condemnation appeal are entitled to offer evidence of facts that would impress a willing buyer in purchasing the land.

 IX. Plaintiffs' third assigned error is that they were denied the right to cross-examine defendant's value witness Wright as to the fair market value of lots claimed to be comparable to those it is asserted could be developed on plaintiffs' land. The assignment is without merit.

 On defendant's direct examination this witness testified to the value of plaintiffs' property before and after the condemnation. On plaintiffs' cross-examination he was asked "Did you make any investigation of what lots were selling for in comparable areas?" He answered "yes". After the answer was in defendant objected to the question as improper for stated reasons. The court overruled the objection but observed "However I think the value of lots would not be admissible."

This remark is the entire record on which this claim of error rests. Plaintiffs' counsel made no objection to the remark,

indicated no disagreement therewith, expressed no desire to pursue the subject further, and gave no indication of what he would expect to prove if he were permitted to show the value of lots. See in this connection Maguire v. Grettenberg Grain Co., 193 Iowa 23, 25, 186 N.W. 644, 645.

Plaintiffs were permitted to show the adaptability of their property for building lots and, as stated, preliminary plats were received in evidence. This was proper. Mohr v. Iowa State Highway Comm., 255 Iowa 711, 720, 721, 124 N.W.2d 141, 147, and citations; Johnson County Broadcasting Corp. v. Iowa State Highway Comm., 256 Iowa 1251, 1254, 130 N.W.2d 707, 709.

However, platting plaintiffs' land into lots was still in the preliminary planning stage at time of trial. It would be difficult or impossible for a witness to compare other existing lots with lots which plaintiffs might ultimately plan and lay out. No such similarity was shown between lots "in comparable areas" and those which might be laid out on plaintiffs' land as to render admissible, as of right, the selling price of such other lots under the rule of Redfield v. Iowa State Highway Comm., 251 Iowa 332, 341, 99 N.W.2d 413, 419, 85 A. L. R.2d 96, and Iowa Development Co. v. Iowa State Highway Comm., supra, 252 Iowa 978, 986, 108 N.W.2d 487, 492.

"Size, use, location and character of the land and time, mode and nature of the sale all have a bearing on the admissibility of such evidence. Much must be left to the sound discretion of the trial court in determining whether the other properties and conditions surrounding sale thereof are sufficiently similar so evidence of such sales is admissible." Iowa Development Co. case, supra.

Aside from evidence of other sales which is admitted under the Redfield rule, testimony of value witnesses as to sale prices of similar properties in the vicinity is received on cross-examination to test the knowledge and competency of the witnesses and the weight and value of their opinions, not as substantive evidence of value of the subject property. Redfield and Iowa Development cases, supra; Belle v. Iowa State Highway Comm., supra, 256 Iowa 43, 47, 126 N.W.2d 311, 313.

We recognize the trial court has considerable latitude in determining what may be shown on cross-examination as bearing on the weight to be accorded their testimony and similar matters. The trial court's remark here complained of was not an abuse of discretion nor did it exceed the latitude accorded him in a matter of this kind. Trachta v. Iowa State Highway Comm., 249 Iowa 374, 390, 86 N.W.2d 849, 859; Redfield v. Iowa State Highway Comm., supra, 251 Iowa 332, 342, 343, 99 N.W.2d 413, 419, 85 A. L. R.2d 96.—Affirmed.

MOORE, STUART, MASON and RAWLINGS, JJ., concur.

SNELL, LARSON and BECKER, JJ., dissent.

THORNTON, J., not sitting.

SNELL, J.—I respectfully dissent from that part of the majority opinion approving the receipt in evidence of the city ordinance restricting access to the highway.

As in many condemnation cases the damage incident to restricted access was a crucial issue.

Prior to condemnation plaintiffs had access to the highway and were using access in two places on each side of the road. There is no claim that prior to establishment of control by defendant-commission or the city that plaintiffs were limited as to access or limited in the right to cross from one side of the road to the other. After condemnation plaintiffs were limited to two field entrances with the provision for future substitution of two subdivision entrances. Where, if at all, traffic would be permitted to cross over and have a choice of direction for travel or get to the other side of the road does not appear from the condemnation records.

Chapter 306A, Code of Iowa, authorizes the establishment and designation of controlled-access highways. The declaration of policy contained in section 306A.1 is a necessary declaration of police power.

"The general rule is that no compensation is due a citizen by reason of damage to property from the lawful exercise of the police power. Compensation must, however, be made for what is taken by eminent domain." Lehman v. Iowa State Highway

Commission, 251 Iowa 77, 82, 99 N.W.2d 404, and cases cited therein.

Section 306A.5 authorizes acquisition of access control by gift, devise, purchase or condemnation. In the case before us acquisition was by eminent domain and is compensable.

It is well settled that an owner is not entitled, as against the public, to access to his land at all points. If he has free and convenient access and his means of ingress and egress are not substantially interfered with he has no cause for complaint. Increased circuity of travel does not constitute a taking of access. The question whether an owner has been denied reasonable access is usually one of fact. Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755, 73 A. L. R.2d 680, Warren v. Iowa State Highway Commission, 250 Iowa 473, 93 N.W.2d 60, and Lehman v. Iowa State Highway Commission, supra.

Denial of access where none previously existed as in the condemnation for a new right-of-way is not compensable. There can be no compensation for something not taken and there can be no taking of something that did not exist. This rule should not be confused with the right to damage resulting from severance. Lehman v. Iowa State Highway Commission, supra, loc. cit. 83, 84 of 251 Iowa.

Section 306A.3, Code of Iowa, authorizes the designation of controlled-access facilities by cities, towns and highway authorities, acting alone or in cooperation with each other or any federal agency.

Over plaintiffs' vigorous objection there was received in evidence Cedar Rapids City Ordinance No. 13-62. This is an ordinance fixing and establishing controlled-access facilities on several highways including highway No. 149 within the city. I quote significant parts of the ordinance not set out in the majority opinion:

"Whereas, primary roads Iowa #64, Iowa #149 and U. S. #151 within the corporate limits of the City of Cedar Rapids, Iowa, as described above were improved; the cost of such improvement was borne by the Bureau of Public Roads and The State Highway Commission, and the participation in the costs

thereof is dependent on the establishment of the controlled-access facilities by the City of Cedar Rapids along said highway improvements and said controlled-access facilities are necessary for the preservation of the public peace, health, and safety and the promotion of the general welfare and

"Whereas, the council agreed under Resolutions D-2165 and D-2166, signed July 11, 1957, to pass ordinances for access control and traffic control, now therefore

"Be it ordained by the city council of the City of Cedar Rapids, Iowa, * * *."

Sections 6 and 7 are set out in the majority opinion.

It is apparent from this ordinance that it was passed by the city council as a part of the improvement project by the highway commission. It is also apparent that the granting of access rights was subject to veto by the commission. It also appears from the testimony of the director of public works for the City of Cedar Rapids that except for the adoption of the ordinance the city had done nothing relative to controlling access to plaintiffs' property.

The city ordinance was not an independent action by the city council. It was a procedure to shift the cost of highway improvement away from the city and it says that it was pursuant to agreement.

The ordinance was a recognition of legislative-created police power to control access but there was no actual taking until the highway commission proceeded by eminent domain. It was the highway commission that conceived, directed and controlled the procedure and finally took by condemnation.

The only purpose for which the ordinance could have logically been offered in evidence was to show that it was the city and not defendant-commission that restricted plaintiffs' access. The almost inevitable result was a conclusion that defendant was condemning nothing that plaintiffs had at the time. The procedure was ingenious but I think the receipt of the ordinance into evidence was prejudical error in that it aided defendant in hiding behind a strawman of its own creation.

Plaintiffs were unfairly handicapped in not having their claim for damages considered free from extraneous matters. As

1244

we said in the concluding paragraph in Crawford v. City of Des Moines, 255 Iowa 861, 124 N.W.2d 868, "The result of the defendant's position here, on the facts pleaded, if upheld, would be illegal confiscation of a substantial part of plaintiffs' property, only faintly disguised, if at all, by a mask of technicalities."

While the objections to the receipt of the ordinance were not as complete as they might have been I think they were sufficient to alert the trial court to the problem.

I would reverse and remand for a new trial.

LARSON and BECKER, JJ., join in this dissent.