WALTEMEYER v. THE WISCONSIN, IOWA & NEBRASKA RAILWAY COMPANY.

1. **Railroads:** APPROPRIATION OF ADJACENT LAND: DAMAGES: EVIDENCE OF TITLE. Where the owner of land brings an action against a railroad company for a permanent injury to the freehold, and not for a mere possessory right, on account of an appropriation by the company of portions of the land adjacent to its right of way, it is necessary for him to prove a freehold title in himself.

2. ———: ———: ———: PLEADINGS AND PROOF. In such case, where plaintiff alleged damages to 160 acres of land, he could not be allowed to prove damages to 240 acres, at a certain rate per acre.

3. ———: ———: LIABILITY FOR ACTS OF SUBCONTRACTORS. Where subcontractors, in building the embankment for a railroad, go outside of the right of way to obtain earth for the embankment, the company cannot be held liable for the trespass, unless it be made to appear in some way that it assented thereto, or had such knowledge of it at the time, or before it was done, as that assent might be presumed therefrom.

*Appeal from Hardin District Court.*

THURSDAY, JUNE 9.

The plaintiff averred in his petition that he was the unqualified owner of 160 acres of land, and that the defendant railway company condemned 100 feet in width through said land for right of way for its railroad; and that, in constructing the said railroad, defendant entered upon plaintiff's land on each side of said right of way, and took strips of

land, outside the right of way, 50 feet wide by 200 feet long, without any authority from plaintiff, and removed the earth from said strips without condemning the same, and destroyed a spring of water belonging to the plaintiff; and he claimed damages in the sum of $500. The defendant by its answer denied each and every allegation in the petition. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*Hubbard, Clark & Dawley*, for appellant.

*John H. Bradley* and *Sutton & Childs*, for appellees.

ROTHROCK, J.—I. The plaintiff averred in his petition that he was the absolute owner of the land. His action was not brought to recover damages to a mere possessory right. The court instructed the jury that it was incumbent on him to prove that he was the owner of the land. The appellant insists that there was no proper evidence of ownership, and we think this position must be sustained. It is true, some of the witnesses, in giving their testimony, referred to the land as plaintiff's farm, but this was merely descriptive of the land. Indeed, there was no attempt on the part of the plaintiff to prove title in the ordinary and usual way. The proceedings in condemning the 100 feet in width were introduced in evidence, but were not admitted for the purpose of showing title in the plaintiff. Even if they were introduced for that purpose, they do not show title. The report of the commissioners shows that the damages awarded are to be paid to the owners of the land "as their interests may appear." It is claimed by counsel for plaintiff that, the action being in trespass, possession was sufficient without proof of title. But the instruction given by the court to the jury was the law of the case, and under it the plaintiff was bound to show that he was the owner of the land; and we think this view of the case was correct, because the plaintiff sought a recovery, not for a mere possessory right, but for a permanent

1. RAILROADS: appropriation of adjacent land: damages: evidence of title.

injury to the freehold, and the court instructed the jury, upon this theory, that the taking of the strips of land on each side of the right of way was a permanent appropriation thereof, and the right of the defendant to fence the land thus appropriated is recognized in the fourth instruction. That an action of this kind, founded upon the ownership of the land, may be maintained, see *O'Hagan v. Clinesmith*, 24 Iowa, 249; *Brown v. Bridges*, 31 Id., 145; *McCormick v. Chicago, R. I. & P. R'y Co.*, 47 Id., 347.

II. The plaintiff described his land in his petition as being a tract of 160 acres. In his evidence he described it

2. —: —: — : pleadings and proof.

as a farm of 240 acres, and he was permitted, against the objection of the defendant, to show that the farm of 240 acres was damaged by the alleged trespass at a certain rate per acre. This was plainly erroneous. The plaintiff did not bring his action for damages done to a farm of 240 acres.

III. As the cause must be reversed for these reasons, we might dispose of the case, so far as this appeal is concerned,

3. —: —: liability for acts of subcontractors.

without further consideration. But, in view of a new trial, it is proper that we should briefly consider another alleged error which more nearly affects the merits of the case. The evidence shows that there is quite an embankment on the line of road at the point in question, and that, in constructing this embankment, the earth outside of the right of way, on both sides thereof, was dug up and used in making the embankment. The work was done by subcontractors, and the defendant claims that it is not liable for the wrongful acts of its contractors, unless such wrongful acts were done by its direction. Upon this phase of the case, the court instructed the jury as follows: "The defendant had the right to condemn extra width of ground beyond 100 feet, if necessary for excavation or embankment in making its road-bed, as a part of its right of way. If it was so necessary to take the additional part of the plaintiff's land for the purpose of embankment, and it

was taken without condemnation, the act of taking it was a trespass, and it is not material to determine whether the persons who did the act in person were contractors or subcontractors, or the employes of subcontractors; they will in law be considered the agents or servants of the defendant, and it will be liable to the plaintiff for whatever injury was directly caused by the act of taking. In other words, the defendant is liable for whatever injury was directly committed by any one acting in its interest in building the road, for taking whatever ground was reasonably necessary to be used for its right of way which was not condemned for that purpose."

We think this instruction cannot be sustained. It puts a mere subcontractor in the place of the company, and authorizes him to determine the question whether the act complained of was necessary to the construction of the embankment. And the evidence does not show that it was necessary to take the earth from outside the right of way. As we read the evidence, earth could have been obtained, for all the purposes required, without making an unreasonable haul. Now, if the subcontractor had no authority from his principal to trespass outside the right of way, and he willfully did so without the assent of the company, the latter is not liable for his willful trespass. We do not determine the evidence necessary to establish such assent. It appears that stakes were set at the outer edge of the land taken, and these stakes were similar to the grade stakes used on the line, and had marks and figures upon them. If these stakes were set under the direction of an engineer of construction, that fact would be competent evidence upon the question as to the assent of the company. It must be made to appear in some way that the company assented to the trespass, or had such knowledge of it, at the time or before it was done, as that assent might be presumed therefrom. Upon this point, see *Steel v. South-Eastern R'y Co.*, 16 C. B., 549; *Eaton v. European & N. A. R'y Co.*, 59 M. E., 520; *Hughes v. Railway Co.*, 39 Ohio St., 461. REVERSED.