IN RE CONDEMNATION OF LANDS: SKALICKY and wife, Respondents, vs. FRIENDSHIP ELECTRIC LIGHT & POWER COMPANY, Appellant.

*May 5—June 20, 1927.*

*Eminent domain: Condemnation by landowner: Questions of title: New trial on appeal: Issues: Evidence: Extent of use as practical construction of grant.*

1. When one seeks to take another's property by right of eminent domain his petition must recite title in and ownership by his adversary, and he is bound by such recognition of title, so that title in the landowner is not an issue in the proceedings; but where the proceedings are initiated by the person who claims his lands are being taken, he must prove his title, and such title becomes an issue in the case. p. 399.
2. On appeal under sec. 32.11, Stats., from the award of the commissioners in condemnation proceedings there is a trial *de novo* in the circuit court on all issues which can be properly framed on the entire record as it then stands; and the landowner must again prove his title to the land in controversy. p. 401.
3. On such trial *de novo* in the circuit court, the refusal of the trial court to allow the defendant to dispute the landowner's title or to show a superior right is reversible error. pp. 401, 402.
4. In condemnation proceedings to condemn land for flowage rights, the refusal of the court to allow defendant to explain the phrase "four run of stone" in the deed through which plaintiffs asserted title, and which excepted the right of flowage of "lands necessary for mill purposes to drive not to exceed four run of stone," was error. p. 402.
5. The fact that a power company had for many years maintained a dam at a certain height is not conclusive as against the right to maintain a higher dam, if its original right of flowage under the conveyances might have permitted a higher one. p. 402.

APPEAL from a judgment of the circuit court for Adams county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

Plaintiffs, as landowners, brought condemnation proceedings.

From 1867 to 1915 a dam had been maintained in said county with a ten-foot head which continuously flowed about three acres of a forty-four and a fraction acre tract, title to which is now in plaintiffs. In 1915 the dam was enlarged so as to have about an eighteen-foot head, and since that time such increase has caused the flowage of about 14.25 acres more of said tract.

The plaintiffs' title is traced from a tax deed of 1880, the immediate deed to plaintiffs was in March, 1902, was recorded and possession taken thereunder in March, 1903, and contained a clause similar to that in prior conveyances and as early as 1867, as follows: "excepting and reserving therefrom the right of flowage of all lands necessary for mill purposes to drive not to exceed four run of stone."

In February, 1924, the present plaintiffs, as then petitioners, made application to the circuit court for the appointment of commissioners. They alleged the ownership by the defendant here, a Wisconsin corporation, of the dam in question, and hydraulic electric plant, in the village of Friendship; that petitioners owned a tract of 44.18 acres more or less, through which flows the stream into the dam aforesaid; that prior to 1915 about three acres of their said tract had been flowed by reason of the maintenance of the ten-foot head, and that on such three acres "a flowage right has long existed in the name of the *Friendship Electric Light & Power Company* and its predecessors in title;" that by the raising of the dam in 1915 to a sixteen or eighteen-foot head some fourteen acres more of the petitioners' lands were being flooded and injured; that it is necessary that the said company acquire a flowage easement in such portion of the lands so now flooded and that the two parties cannot agree upon the compensation to be paid for the purchase, lease, or use of such lands. They asked for appointment of commissioners and the determining of compensation.

Upon this petition an order was made by the circuit court fixing the time and place for the hearing and for the giving

Skalicky v. Friendship E. L. & P. Co. 193 Wis. 395.

of notice. The said order also recited: "and that the rights of flowage by the *Friendship Electric Light & Power Company* in the lands of petitioners be determined and fixed."

A verified answer to said petition was made which, among other things, alleged that the property described in the petition "is now and for many years past and prior to petitioners' ownership thereof, been subject to the right of flowage and right of flowing all of said land thereof necessary for mill purposes not to exceed four run of stones." It admitted the additional overflowing as alleged in the petition, but alleged that the said lands for many years past have been and still are subject to the said flowage by said company and that such right of flowage was acquired by virtue of a deed of June 13, 1921.

It alleged that for many years the lands of the petitioners have at all times been subject to the right of flowage and right of flowing all such lands necessary for dam purposes. Also that the conveyances under which petitioners claim title expressly reserve and except from the grant the right of flowage as in said answer alleged. The answer further denied that petitioners suffered any damages or are entitled to any compensation, and prayed for dismissal of the petition and a denial of any appointment of commissioners.

Thereafter findings of fact and conclusions of law were made by the court.

The court found, among other things, that the reservation in the deed of 1867 and other deeds through which defendant claimed its flowage right, reading, "excepting and reserving the land necessary for flowage . . . or all of said land necessary for mill purposes to drive not to exceed four run of stone," is so indefinite and uncertain as to make it no longer possible to fix the extent of the flowage rights thereby.

That the maintaining of not to exceed a ten-foot head of water in the dam from 1867 to 1915 was a height acquiesced in and accepted by all the interested parties as the height to

which the water could be maintained and amounted to a practical construction of the original reservations, and that the defendant is now estopped from raising the head of the water; and that the petitioners were entitled to have commissioners appointed to ascertain the compensation.

No exceptions were filed by the company to such findings.

In June, 1925, the commissioners determined compensation in the sum of $738.

Immediately thereafter the said petitioners gave notice of appeal to the circuit court from the award of the commissioners and from the whole thereof fixing the amount of compensation for the taking of a right of flowage on said land.

On said appeal, before a jury, the damages were fixed at $1,000.

After motions by the respective parties the court below denied defendant's motions and directed judgment for said sum.

From such judgment defendant appeals.

For the appellant there was a brief by *Charles H. Gilman* of Friendship and *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Mr. Theo. W. Brazeau* and *Mr. Gilman.*

For the respondents there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman Quale.*

ESCHWEILER, J.    The appellant company contends that upon the appeal taken by the petitioners from the award of the commissioners there must be a trial *de novo* in the circuit court of all the issues presented by the petition and the answer.    The respondents contend that the company, having failed to file exceptions to the findings made in the first hearing wherein commissioners were appointed and having failed to appeal from the order therein, is conclusively bound by the result of the preliminary hearing and that no question

is or can be presented on appeal other than the amount of damages for the taking. The trial court ruled upon the offers of evidence made by the defendant in accord with respondents' contention and such rulings present the primary questions to be determined.

These proceedings were instituted by landowners under ch. 32, Stats., regulating condemnation under the power of eminent domain.

Sec. 32.04, Stats., provides two separate and distinct methods by which condemnation proceedings may be started:

First, the manner in which one who seeks to acquire property belonging to another shall proceed; and then—

Second, the manner in which the owners of the property, such as plaintiffs here, may or shall proceed against any one taking their property without first having obtained the right so to do under such section.

The second method is found in the last two sentences of said section, providing that "If any owner of property desires to institute condemnation proceedings, he shall present his verified petition therefor," etc. It is by this section, and not by sec. 32.15, as is claimed by respondents, that they come into court.

The distinct, separate, and adverse nature of the two methods prescribed in these proceedings, dependent upon the fact as to who takes the initial steps, is well illustrated by the established rule that when one seeks to take, by right of eminent domain, another's property, and in the petition recites, as must be done, title in and ownership by his adversary, such taker is thereafter bound by such expressed recognition of title and cannot afterwards be heard to assert to the contrary, nor compel the one so recognized as owner to prove or defend his title. In proceedings so initiated the title of the landowner is not in issue. *Murray Hill L. Co. v. Milwaukee L., H. & T. Co.* 126 Wis. 14, 23, 104 N. W. 1003. But on the other hand, where the person whose lands, it is

claimed, are being taken, initiates the condemnation proceedings, he must both assert and prove his title, and such title, if not conceded, is an issue. *Walton v. Green Bay, W. & St. P. R. Co.* 70 Wis. 414, 417, 36 N. W. 10; *Taylor v. C., M. & St. P. R. Co.* 81 Wis. 82, 87, 51 N. W. 93; these two cases being expressly approved on this point in *Murray Hill L. Co. v. Milwaukee L., H. & T. Co., supra* (p. 24).

Then comes the further question as to the issues presented on appeal from an award.

When such initial proceedings, by whomsoever instituted, have culminated (under other statutory provisions not necessary for consideration here) in the fixing of the compensation for the taking, then the same chapter provides by sec. 32.11—the only one as to appeals—that "Any party to a condemnation proceeding may appeal from the award of the commissioners to the circuit court of the county. . . ." This must be done within thirty days from the filing of the report. The section further provides:

"The clerk shall thereupon enter the appeal as an action pending in said court with the owner or owners of the property for which the award was made and who are parties to the appeal as plaintiffs, and the party by whom the property is taken as defendant. It shall thereupon proceed as an action in said court subject to all the provisions of law relating to actions originally brought therein. It shall be tried by jury unless waived. Costs shall be allowed to the successful party on the appeal. If in favor of the plaintiff they shall be added to the verdict. If in favor of the defendant, they shall be deducted therefrom."

Giving force and effect to, and a reasonable interpretation upon, this quoted language, and especially the portion to the effect that, irrespective of who started the proceedings, the landowner becomes plaintiff and the party taking the land defendant in the circuit court, and that thereafter it shall proceed as subject to all provisions of law relating to actions originally brought therein, requires, we think, a holding that

when such purely statutory condemnation proceedings reach the circuit court on appeal they are then, by force of this statute, for trial *de novo* before the court and jury and upon any and all issues that can be properly framed or asserted upon the entire record as it then stands. This same subject was fully discussed under former sec. 1849 (in substance the same as sec. 32.11, *supra*) in *Spies v. C. & M. E. R. Co.* 148 Wis. 35, 133 N. W. 1110, where the petition was by the company, the landowner appealing and withdrawing the money which had been paid into court and the verdict being much less than the award, nevertheless the company, though not appealing, was entitled to a judgment for such excess. This decision held that on such appeal by the landowner there must be a trial *de novo.* The nature of these proceedings and the appeal to the circuit court is again fully discussed in *Milwaukee L., H. & T. Co. v. Ela Co.* 142 Wis. 424, 428, 432, 125 N. W. 903. See, also, *Wooster v. Sugar River V. R. Co.* 57 Wis. 311, 313, 15 N. W. 401. We have examined the cases from other jurisdictions cited to us on this point, but find none that are here applicable.

A strictly literal following of this statute, apparently limiting the right of an appeal to "the award of the commissioners," might possibly prevent a landowner commencing the proceedings from going further after an adverse ruling by the court at the outset as to his ownership or right to any damages, but such question is not here presented, for the appeal here is concededly correct.

In the instant case the proceedings originally instituted by the landowner, he asserting his title and it not being conceded by his adversary, the plaintiff landowner must again prove his title and ownership of the lands claimed to be taken, because without such ownership he can be entitled to no relief whatsoever. In the case at bar the petitioners apparently recognized such necessity and made formal proof of their record title to the lands flowed as part of their case. The defendant

was, however, by the rulings of the trial court prevented from disputing plaintiffs' title or showing a superior right, and in such rulings there was reversible error.

The appellant made several formal offers of proof as to what was meant by the phrase "four run of stone"—found in the conveyances through which plaintiffs asserted title, objections thereto being sustained.

We think an expression of such nature found in the conveyances upon which plaintiffs asserted title and being a term not in such general use that the court can and must take judicial notice of its meaning, was a subject matter proper for competent expert testimony. That until it has been demonstrated by proof or confessed by lack of proof that the term cannot be explained or shown to have some recognized definite meaning in its own particular field of usage, the phrase itself is not so indefinite and uncertain that it cannot be applied in a situation such as was here presented.

We think it was as clearly the subject for competent expert witnesses as was the term "square inch of water" in the case of *Janesville Cotton Mills v. Ford,* 82 Wis. 416, 423, 52 N. W. 764; or "inch of water" in *Jackson M. Co. v. Chandos,* 82 Wis. 437, 444, 52 N. W. 759; or "rated capacity" of a boiler in *U. S. Heater Co. v. Jenss,* 128 Wis. 162, 165, 107 N. W. 293; or "loading off shore" in a marine policy in *Johnson v. Northwestern Nat. Ins. Co.* 39 Wis. 87, 93; 1 Jones, Evidence (2d ed.) § 455.

Exception was also taken by appellant to the determination by the trial court that the maintenance of the head of water in the dam at ten feet and no more during the years intervening 1867 and 1915 was a practical construction, binding on defendant, as to the height of water that might be properly maintained under whatever flowage rights defendant or its predecessors might have under any conveyances.

Under the record as it is now presented, we can recognize no such force or weight to be given to the mere fact of maintaining the dam at such particular head during those years.

If the original right of flowage under the conveyances did, as a matter of law, permit a greater head than ten feet, then the mere fact that the defendant and its predecessor did not choose to increase the head until 1915 could not of itself alone so materially change and alter the original grant as to cut it down to the actually used head. *Hemmis v. Consolidated W. P. & P. Co.* 173 Wis. 518, 522, 181 N. W. 743. It was also offered to be shown, and should have weight if established, in the construction to be given to the extent of flowage granted and also on its actual use, that for a time at least only two and not four run of stones were operated.

The record before us is such that we do not feel authorized to now dispose of the case.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings.