In re Condemnation of Certain Land.
(Primary Road No. 141 in Carroll County, Project No. FN-334)

Wade Mohr et ux., appellees, v. Iowa State Highway Commis-
sion, appellant.

No. 50981.

(Reported in 124 N.W.2d 141)

OCTOBER 15, 1963.

Evan Hultman, Attorney General, C. J. Lyman, Assistant Attorney General, A. Jackson Allen, State Counsel, and Minnich & Minnich, of Carroll, for appellant.

Clark & Clark, of Ames, and M. R. Tan Creti, of Carroll, for appellees.

GARFIELD, C. J.—Plaintiffs are husband and wife who own a virtually unimproved tract of about 14½ acres in the southwest part of the town of Manning. At the time of the condemnation, July 11, 1961, the south side of the tract at its west end abutted the north side of east-west highway 141 for about 162 feet. Defendant state highway commission (herein called "commission") condemned .16 of an acre of this frontage for the purpose of widening the highway. It also condemned .13 of an acre just south of the .16. The state had an easement over the .13 but not the legal title. It was, however, included within the then right-of-way of 141 just north of the center. The .13 acre was a strip 33 feet wide. The .16 acre north of the .13 acre was 47 feet wide. The line between these two strips, along the old right-of-way line, was 162 feet long. Direct access to the highway was also condemned.

Commissioners appointed pursuant to section 472.6, Codes, 1958, 1962, assessed the damages due plaintiffs at $125. Upon plaintiffs' appeal to the district court the jury there fixed the damages at $10,000. The commission's motion for new trial was overruled and it has appealed to us.

Only the east boundary of the tract is a straight (north-south) line. It abuts an alley 18 feet wide. The north and south

boundaries respectively run generally east-west. The west boundary runs diagonally northeast-southwest along the right-of-way of a line of Chicago Great Western Railway. Roughly the west two thirds of the north line of the tract abuts the south side of Third Street which parallels highway 141. The shortest distance between Third Street and the old right-of-way of 141 is about 850 feet. A stream, the Nishnabotna River, enters the tract from the north and flows diagonally southwest. About one third the tract lies west of the Nishnabotna, two thirds to the east.

The accompanying plat, taken from an exhibit but reduced in size, may help visualize the tract.

There is no dwelling on the land. Some outbuildings are situated near the center of the east part along the alley. They are of no particular value. Ten concrete railroad piers stand near the south end of the remaining part west of the Nishnabotna. No business or industry has ever been conducted on the tract. In 1959 corn was planted on it. Some years it was used for pasture.

We will refer later to other facts, especially those bearing on the extent of plaintiffs' damages.

I. One of plaintiffs' witnesses who expressed an opinion as to the value of the tract before and after the taking of the .29 acre was asked on recross-examination if a cloud or encumbrance upon the title would affect the value in any way. The court sustained plaintiffs' objection of incompetent, irrelevant, immaterial and calling for a legal conclusion. The ruling is assigned as the first error. It is argued defendant was properly seeking to test the witness's qualifications.

At the time the question was asked there was no evidence of a cloud or encumbrance upon plaintiffs' title. It developed, however, that according to the long, involved metes-and-bounds description by which they held title, two points along the west boundary line failed to close or meet by 9.5 feet. Defendant's counsel advised the court they would "connect this up" later.

We are not persuaded the ruling was an abuse of discretion. It is true considerable latitude is usually allowed in cross-examination of experts, including those who testify to property values. Also it is not necessary that the cross-examination be confined to facts established in the case. Storbeck v. Fridley, 240 Iowa 879, 883, 38 N.W.2d 163, 166, and citations.

The trial court has wide, though not unlimited, discretion in the matter of the extent of cross-examination. Iowa Development Co. v. Iowa State Highway Comm., 252 Iowa 978, 991, 108 N.W.2d 487, 495; Korf v. Fleming, 239 Iowa 501, 512, 32 N.W.2d 85, 92, 3 A. L. R.2d 270. Some of our decisions say, however, it is only after the right has been substantially and fairly exercised that its allowance becomes discretionary. Glassman v. Chicago, R. I. & P. R. Co., 166 Iowa 254, 260, 147 N.W.

757; Dean v. State, 211 Iowa 143, 152, 233 N.W. 36; Storbeck v. Fridley, supra.

If, as we hold in Division II hereof, plaintiffs' ownership of the tract was not properly a disputed issue in the case, it was not an abuse of discretion to exclude cross-examination on the effect of a cloud upon the title. "The scope of cross-examination of a witness as to value is largely a matter within the discretion of the presiding justice. Generally speaking, a wide latitude is permitted, but it should not include irrelevant and immaterial matters." 32 C. J. S., Evidence, section 560a(2), page 373. See also Korf v. Fleming, supra; Wilson v. Fleming, 239 Iowa 718, 725–728, 31 N.W.2d 393, 397, 398; City of Chicago v. Pridmore, 12 Ill.2d 447, 147 N.E.2d 54, 57.

II. After plaintiffs rested their case and defendant offered the testimony of one of its engineers, it moved to dismiss the action on the ground plaintiffs failed to prove title to the tract in question inasmuch as the boundaries described in the deed to plaintiffs of the west part of the tract failed to close and the deed conveyed nothing. Overruling the motion is assigned as error.

The jury was instructed plaintiffs were the owners of the tract in question. Defendant objected to the instruction on the ground asserted in support of the motion to dismiss just referred to. The claimed errors in the instruction and in overruling the motion to dismiss are argued in one division.

When the commission instituted the condemnation proceeding out of which plaintiffs' appeal to the district court arose it was required to file its application with the sheriff and to set forth therein in part:

"1. A description of all the property in the county, affected or sought to be condemned, * * *.

"2. A plat showing the location of the right of way or other property sought to be condemned with reference to such description.

"3. The names of all record owners of the different tracts of land sought to be condemned, or otherwise affected by such proceedings, and of all record holders of liens and encumbrances on such lands; * * *." Section 472.3, Codes, 1958, 1962.

The report of the condemnation commissioners indicates the commission's application to the sheriff named plaintiff Wade Mohr, owner, and plaintiff Thelma Mohr, spouse, as those affected by the proceeding. The Chicago & Northwestern Railway Company, from which plaintiffs acquired the west portion of the tract, is not named as an affected party. The description referred to is evidently the one in the deed from "the Northwestern" to Wade Mohr. Failure of the west boundary line to close, as above described, is at a point on the line about 185 feet north of the strip condemned.

Since the commission's application names plaintiffs as owners of the tract, we think it was not error to overrule the motion to dismiss on the ground asserted or to instruct the jury plaintiffs were the owners. We hold this is true even though the commission's answer to plaintiffs' petition contains a bare denial they own the land described. If plaintiffs are not the true owners of the tract from which the condemned strip is taken, the commission should have proceeded against such owners. The title records are of course open to the commission and it determines the parties against whom to proceed.

Tracy v. City of Mt. Pleasant, 165 Iowa 435, 453, 146 N.W. 78, 85, a condemnation appeal, holds "It was not necessary to prove the title to the land in controversy, for the city alleged that it belonged to the plaintiffs, and the owners merely took it at its word."

29 C. J. S., Eminent Domain, section 266b, page 1239, states: "If the petitioner recognizes the person in possession of the land as its owner by instituting against him a condemnation proceeding, no issue is raised as to the title to the land, and such person will not be required on the trial to prove his title, since the petitioner will not be permitted to deny it."

Precedents which support the C. J. S. text include United States v. Chicago, B. & Q. R. Co., 7th Cir., Wis., 90 F.2d 161, 171, certiorari denied 302 U. S. 714, 58 S. Ct. 33, 82 L. Ed. 551; Muskingum Watershed Conservancy Dist. v. Fry, 62 Ohio App. 323, 23 N.E.2d 962, 963; Skalicky v. Friendship Electric L. & P. Co., 193 Wis. 395, 214 N.W. 388, 390, and citation. The case

first cited is quite in point. It holds the owner in a proceeding of this kind is not required to prove merchantable title.

See also as supporting the conclusion reached in this division Tenney Telephone Co. v. United States, 7th Cir., Wis., 82 F.2d 788, 790; City of Chicago v. Pridmore, supra, 12 Ill.2d 447, 147 N.E.2d 54, 57; Ketchum Coal Co. v. District Court, 48 Utah 342, 159 P. 737, 4 A. L. R. 619, 629; Mills on Eminent Domain, Second Ed., section 65. The Tenney Telephone Company case points out such a contention as the commission makes here amounts to this: if the condemnee fails to prove his title, the condemnor may take the part condemned without compensation.

We do not regard Costello v. Burke, 63 Iowa 361, 363, 364, 19 N.W. 247, or Waltemeyer v. Wisconsin, Iowa & Nebraska R. Co., 71 Iowa 626, 33 N.W. 140, cited by the commission, as in point.

III. It is asserted evidence was erroneously admitted as to particular plans plaintiffs had concerning future use of their property.

Plaintiffs' principal claim to substantial damages is that the tract, especially the west part, is adapted to commercial or industrial use such as a filling station for which direct access to highway 141 is essential, and that taking such right of access prevents such use of the property. The commission properly concedes all uses to which the land is adapted may be considered. It contends, however, no reasonable probability is shown of a demand for commercial or industrial use of the tract in the foreseeable future and also that plaintiffs may not show any particular plans they had for such use.

Plaintiffs acquired the west part of their property, including the condemned parcel, by quitclaim deed from Chicago & Northwestern Railway Company, dated March 21, 1961. As stated, the condemnation was July 11, 1961. Plaintiff Mohr testified he started dealing for this west part two years before the trial in May 1962. An engineer from Denison testified Mohr consulted him with reference to plans for developing this portion of the land during the past two years.

The engineer (Halverson) also said he made a grading plan

for this west portion; the areas adjacent to 141 and Third Street would require filling with 13,000 yards of dirt to an average depth of probably two or three feet; the dirt was to be obtained by widening the Nishnabotna River about 60 feet on each side; doing so would take care of any overflow from the river; the dirt work would cost about $3000; assuming the property adjacent to 141 was developed for a commercial purpose it would have provided adequate access for 162 feet for certain types of business.

The above evidence was received without objection. The witness was then asked whether the portion abutting the 162 feet would provide adequate access for a diversified operation of a garage, service station, used car lots and repair facilities. Over the commission's objection that he was not shown qualified to answer and the question called for an opinion and conclusion as to facts not in the record and which are remote and speculative, the witness said it would. The answer did not add a great deal to the one preceding it to which no objection was made.

Plaintiff Mohr was permitted to testify, over the commission's objection it was remote and speculative, that before he acquired the west portion of the tract he and Parkison, the Ford dealer in Manning, planned to build a filling station and garage and have a used car lot on it.

Merle Stoelk, a real-estate and insurance man—also an auctioneer—testified for plaintiffs to the value of the tract before and after the taking. He was asked whether it was readily adaptable for diversified use as a filling station, garage, car repair and such as that. The witness said, "I think with all this land along the railroad and they were going to widen this ditch and slope it up—." The commission then objected that the answer was beyond the scope of the question and consisted of speculation as to what the owners would have done. The court said, "Overruled, overruled, proceed with your answer."

The witness then continued: "With getting this land from the railroad and being able to slope this, which naturally the river then wouldn't flood, and they were going to, as I understand it, have a street through there, there would be a lot of space for development such as, oh, I don't know * * * there was

a fertilizer outfit that wanted to come in that would be next to the railroad and it looks to me like there would be eight or ten of those spaces available if this access hadn't been closed."

While the question was proper, the answer was vulnerable to the objection. Since the witness indicated before the last quoted answer about what he intended to say, the objection should have been sustained. The witness was incompetent to testify to the owners' intentions, the effect on flooding of widening the river and that a fertilizer outfit wanted to locate on the tract. We find no reference to "a fertilizer outfit" in the testimony of plaintiff, Halverson or Parkison.

Defendant complains of the admission of some other evidence. Part of it was received without objection. We have considered the complaints and find no reversible error in the admission of other testimony.

In general, considerable latitude is allowed in the admission of evidence of the capabilities of land affected by a condemnation and the uses to which it may reasonably be adapted. It is true there must be a present demand for the land for such uses or reasonable expectation of such demand in the near future. It must be remembered too that such evidence is to be considered only for the effect it has on market value at the time of the taking, not at some future time.

This from Ranck v. City of Cedar Rapids, 134 Iowa 563, 565, 566, 111 N.W. 1027, 1028, states the rule we have applied: "* * * the owner is entitled to have the jury informed of all the capabilities of the property, as to the business or use, if any, to which it has been devoted, and of any and every use to which it may reasonably be adapted or applied. And this rule includes the adaptation and value of the property for any legitimate purpose or business, even though it has never been so used, and the owner has no present intention to devote it to such use" (citations).

Some later decisions to like effect are cited in Iowa Development Co. v. Iowa State Highway Comm., 252 Iowa 978, 988, 989, 108 N.W.2d 487, 493. See also 29 C. J. S., Eminent Domain, section 160, pages 1024–1029; 18 Am. Jur., Eminent Domain, section 244, pages 879–881; Lewis on Eminent Domain, sections 706, 707.

▇ We are not persuaded admission of evidence, other than the quoted answer of the witness Stoelk, was error. It is true the tract in question could be used for commercial purposes only after the expenditure of considerable money for filling, grading and the like. But substantial expenditures for such purposes are frequently required where a tract is subdivided for building lots. Evidence of the adaptability of a tract for building lots is often received in such actions as this. Ranck v. City of Cedar Rapids, supra, 134 Iowa 563, 570, 111 N.W. 1027; 29 C. J. S., Eminent Domain, section 160, pages 1027, 1028.

▇ Although there is authority to the contrary, we have held, in line with a good many outside decisions, that evidence of a plan for the proposed improvement of the affected property is admissible for the purpose of showing its capabilities. Iowa Development Co. v. Iowa State Highway Comm., supra, 252 Iowa 978, 988, 108 N.W.2d 487, 493; Chicago and Evanston R. Co. v. Blake, 116 Ill. 163, 4 N.E. 488, 491; Rock Island and Eastern I. Ry. Co. v. Gordon, 184 Ill. 456, 56 N.E. 810, 811, 812; Union Terminal R. Co. v. Peet Bros. Mfg. Co., 58 Kan. 197, 199, 200, 48 P. 860; Chicago, Kansas & Nebraska Ry. Co. v. Davidson, 49 Kan. 589, 31 P. 131, and citations; Cincinnati and Springfield Ry. Co. v. Longworth, 30 Ohio St. 108. See, however, Sexton v. Union Stock Yards & Transit Co., 200 Ill. 244, 65 N.E. 638, 639, 640.

IV. The two remaining assigned errors are: 1) failure to grant a new trial on the grounds the verdict was excessive and does not reflect the proper measure of damages, and 2) the judge who overruled the motion for new trial was not the one who presided at the trial and failed to give the motion proper consideration. We will consider these two claims in this one division.

Six witnesses in addition to plaintiff Mohr expressed an opinion as to the value of the tract before and after the taking of the .29 acre. Two of them gave a before-value as some amount between a high and low figure. Also two opinions were expressed in like manner as to the value after the taking. We have used the mean or average of these high and low figures. The average before-value of the seven witnesses is $25,357. The average

after-value is $2832, leaving an average difference in the before-and-after values of $22,525, as the amount of plaintiffs' damages. So the verdict is well within the opinions expressed by plaintiffs' witnesses.

Plaintiffs' petition alleges the before-taking value was $25,-000, the after-taking value was $3575, leaving a difference of $21,425. Thus the average of the damage testified to by plaintiff Mohr and his witnesses exceeds that alleged in the petition. One witness, a veterinarian who owned a joint interest in land with a frontage on highway 141, gave the before-taking value of plaintiffs' 14½ acres as $30,000, the after-taking value as $1500, leaving a difference of $28,500, over $7000 more than plaintiffs' petition claimed. The witness Stoelk also gave the after-taking value as $1500, slightly more than $100 an acre.

· The commission produced three value witnesses who seemed to be at least as well qualified as those produced by plaintiffs. One was cashier of the First National Bank in Manning, a life-long resident there. The average before-taking value expressed by these witnesses is $2766.67; the average after-taking value is $2241.67, leaving a difference of $525.

In Redfield v. Iowa State Highway Comm., 251 Iowa 332, 335, 99 N.W.2d 413, 415, 85 A. L. R.2d 96, there was much less difference from what there is here in the opinions of the witnesses for the opposing parties. But we were moved to comment there was force to the "claim that the actual records of sales of comparable properties from which the witnesses gained their knowledge are more reliable evidence than mere opinions of the experts."·

Other evidence on the extent of plaintiffs' damage indicates the opinions of their witnesses thereon are grossly excessive. Plaintiff Mohr acquired the east part of their property (approximately two thirds), including 173 feet of frontage on highway 141, immediately east of the 162-foot strip condemned, by deed dated August 23, 1958, less than three years before this condemnation. Mr. Mohr says he paid $3800 for it. Two dollars and twenty cents of revenue stamps were attached to the deed, indicating a consideration of $2000.

Our Redfield opinion, supra, states: "The revenue

stamps are as reliably indicative of the consideration as a recited amount would be. The stamps were attached to the deed pursuant to federal statute, the violation of which is a crime. With this reason for affixing the stamps we think the revenue stamps attached to the deed may be said to indicate with reasonable certainty the consideration paid" (citations) (page 343 of 251 Iowa, page 420 of 99 N.W.2d).

By written contract received in evidence without objection dated February 7, 1961, plaintiffs agreed to sell the commission for $125 the strip 80 feet wide, 173 feet long, just east of the 162-foot strip, together with all right of access to and from the highway. Mr. Mohr testified he did not understand he was parting with his right of access although the contract plainly so provides.

As previously explained, the west portion of the tract which it is claimed is more valuable for commercial use, including the condemned parcel, was acquired from the Northwestern Railway March 21, 1961. Plaintiffs paid $500 for it. Nothing was done in the way of improving it. Plaintiffs' whole tract was in the same condition at the time of condemnation as at the times of purchase.

■■■ There is no doubt the prices plaintiffs recently paid for the two portions of the tract are properly to be considered on the question of its value at the time of condemnation. Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 773, 61 N.W.2d 687, 693, and citation; Redfield case, supra, 251 Iowa 332, 344, 99 N.W.2d 413, 420, 85 A. L. R.2d 96. At least two of plaintiffs' value witnesses said the prices plaintiffs paid for their land did not enter into their estimate of its value. One of them testified, "You can buy a dog today for a dollar and maybe he's worth $50 tomorrow."

■■■ A property slightly west of plaintiffs' comparable to, or more valuable than, theirs, with a frontage of 154 feet on highway 141, with no stream that severs it, and with the advantage of a sewer through it, sold in 1957 for $2800. Under our Redfield decision this is substantive evidence of the value of plaintiffs' land. See also Iowa Development Co. v. Iowa State Highway Comm., supra, 252 Iowa 978, 986, 108 N.W.2d 487, 492. Plaintiffs offered no evidence of sales of comparable properties.

It is without dispute that plaintiffs' tract is low and must be filled before it can be used for commercial or industrial purposes or as a building site. Mr. Halverson estimated the required fill would average two to three feet but said the ground was lower around the ten railroad piers. It would appear demolition of the piers would be necessary before the land could be put to commercial use. One of defendant's witnesses testified it would take six to eight feet of fill to bring the tract up to the level highway 141 had before its grade was raised. The land was subject to overflow in times of heavy rains or floods. As explained, it was proposed to widen the river to keep it from flooding. It was also proposed to build a road along an abandoned railroad grade about parallel to and inside the west boundary line. Of course all this would require much expense.

Then there is no certainty the property would be in demand for commercial use—a use to which it had never been put. A filling station, cafe and "the motel" are situated just to the east. Another filling station is a short distance to the west.

■■■ Manning has been losing population rather than gaining. We take judicial notice of population shown by an official census. Bennett v. City of Marion, 106 Iowa 628, 630, 76 N.W. 844; First National Bank v. Anderson, 196 Iowa 587, 604, 192 N.W. 6; 31 C. J. S., Evidence, section 98, pages 696, 697. The town's population was 1676 in 1960, 1801 in 1950, 1748 in 1940, 1817 in 1930, and 1863 in 1920.

■■■ In estimating plaintiffs' damages, the fact the south .13 acre of the condemned strip, within the former right-of-way of 141, was subject to an easement in favor of the state should not be overlooked. The servitude decreased the market value of the fee. 18 Am. Jur., Eminent Domain, section 248.

While plaintiffs have been deprived of direct access to highway 141, they still have free access from Third Street and the alley on the east.

■■■ We have referred to the fact the award of the condemnation commissioners was $125. The district court jury's verdict is 80 times such award. Notwithstanding the opinions expressed by plaintiffs' value witnesses, the size of the verdict, under this entire record, is shocking to us.

This verdict does not come here with the approval of the judge who presided at the trial. Before defendant's motion for new trial was ruled upon, the presiding judge was appointed to the federal bench. It seems to be agreed he was sworn in as such appointee the day another judge in the district overruled the motion for new trial. We do not question Judge Braginton's power to act upon the motion. Rule 367(a), Rules of Civil Procedure, recognizes such power. It has been exercised before in the event of death or disability of a judge.

We have said the fact a judge, other than the one presiding at the trial, passes on the motion for new trial does not warrant modification of the rule according the trial court a large discretion in determining whether another trial should be granted. It does, however, limit the scope of his inquiry to the record before him since he can know nothing else as to occurrences at the trial. Underwood v. Leichtman, 188 Iowa 794, 797, 176 N.W. 683.

In the cited case the judge who presided at the trial died. Another judge of the district ruled an instruction to the jury was erroneous and the evidence conclusively proved the affirmative of a controlling issue in the case. He therefore granted a new trial and we affirmed. The only apparent means of knowing what the evidence was would be a reading of the transcript.

It is so well established that authorities need not be cited in support thereof that we are slower to interfere with the grant of a new trial than with its denial. Rule 344(f)4, Rules of Civil Procedure.

A more recent decision than the one last cited states: "Much of the reason for allowing trial courts considerable discretion in ruling on requests for new trial is because of the knowledge gained by them during the trial." Eller v. Paul Revere Ins. Co., 230 Iowa 1255, 1261, 300 N.W. 535, 538. Here of course Judge Braginton gained no knowledge of the case during the trial.

What consideration Judge Braginton gave the motion does not appear. He overruled the motion generally with an entry of two lines, without complying with rule 118, R. C. P., which re-

quires separate ruling on each ground. Oral arguments on the motion were not heard nor were briefs called for. Defendant's counsel assure us they did not know the motion was under consideration.

The motion for new trial asserts in some detail the verdict was excessive and that on the whole record the court in its discretion should order a new trial before a different jury. We are persuaded it was an abuse of discretion for Judge Braginton to overrule the motion.

This is not the first time we have held a verdict in such a case as this excessive even though opinion testimony of the owner's witnesses supports it. Jenkins v. Iowa State Highway Comm., 208 Iowa 620, 224 N.W. 66; Luthi v. Iowa State Highway Comm., 224 Iowa 678, 276 N.W. 586; Stortenbecker v. Iowa Power & Light Co., 250 Iowa 1073, 1082, 1083, 96 N.W.2d 468, 473, 474. See also Campbell v. Iowa State Highway Comm., 222 Iowa 544, 269 N.W. 20. And, unlike the situation here, in these precedents the verdict came to us with the approval of the judge who presided at the trial.—Reversed and remanded.

All JUSTICES concur.