**John C. HEINS, also known as John C. Heins, Jr., and Martha R. Heins, Appellants,**

v.

**IOWA STATE HIGHWAYS COMMIS- SION, Appellee.**

No. 54022.

Supreme Court of Iowa.

April 9, 1971.

Rehearing Denied June 14, 1971.

W. Howard Smith, O. J. Elsenbast, and John D. Randall, Cedar Rapids, for appellants.

Forrest W. Rosser, Cedar Rapids, for appellee.

UHLENHOPP, Justice.

This appeal involves several legal questions which arose in the trial of a condemnation case.

John C. Heins, whom we will call plaintiff, owns a 72.59-acre tract of land in Ce-

dar Rapids, Iowa. Blair's Ferry Road adjoins plaintiff's tract on the north. Railroad rights-of-way adjoin it on the east and south. A city sewer runs through the next parcel of land east of those railroad rights-of-way.

Defendant Iowa State Highway Commission condemned 23.26 acres in the southeast part of plaintiff's tract. The remaining northwest part of his tract, consisting of 49.33 acres, is thus separated from the railroads and is separated farther than it was from the sewer. Defendant will use the condemned land for borrow to improve Center Point Road and for right-of-way for the Cedar Valley Expressway.

The parties could not agree on the damage from the condemnation. The sheriff summoned a jury, which viewed the premises and found the amount of damage. Both parties appealed to district court, defendant on December 6, 1966, and plaintiff on December 7, 1966. The case was tried to a jury there, with plaintiff opening and closing the evidence and arguments. Plaintiff asked $214,510. The jury found the amount of the damage to be $36,935. Plaintiff appeals to this court.

Plaintiff's claims on this appeal are four: the trial court should have (1) expressly submitted the matter of separation of plaintiff's remaining land from the railroads and sewer as bearing on the before and after values of his property, (2) placed the burden of proof on defendant, (3) ruled differently on certain evidentiary matters, and (4) instructed the jury in a new way on plaintiff's being made whole by the award.

I. *Railroads and Sewer.* Plaintiff presented three value witnesses including himself. He himself testified the previous tract of 72.59 acres was worth $6,000 per acre, whereas the remaining tract of 49.33 acres is worth $4,500 per acre; his witness Dytrt testified the whole tract was worth $4,250 per acre, while the remaining tract is worth $3,000 per acre; and his witness Pickard testified the whole tract was worth

$4,000 per acre and the remaining tract is worth $2,500 per acre. Plaintiff demonstrated by these witnesses, and the jury could reasonably find, that his damage was not simply the loss of the 23.26 acres condemned but also the reduction in value of the remaining 49.33 acres, and that such reduction was caused in substantial part by being cut off from the railroads and by being separated farther from the sewer. The witnesses thought the highest and best use of the land was for industry. They testified about the value added to the whole tract by the presence of the adjacent railroads and the sewer and told about the route that spur tracks could be run. As to the advantage of the adjacent railroads, a witness testified that "the location of the railroad tracks as applied to the 23.26 acres would make it suitable for the use of railroad trackage, and with the Milwaukee being higher than the Illinois Central, the ground rises naturally there, they could run a spur track on the west edge of the property from the Milwaukee and on the east edge from either the Illinois Central or the Waterloo Cedar Falls & Northern." Another witness said that "after the taking of the 23.26 acres of the area which is surrounded on two sides by the railroad, such would affect the remaining property after the taking and that the 49.33 acres would decline in value". Still another witness testified flatly, "After the taking of the 23 acre tract, the remaining 49 acre tract has lost its industrial use".

As to the sewer in the property on the other side of the railroads, a witness testified, "As long as sewer and water is accessible, that is the only thing that is important as to industrial property. It does not have to be on the property because generally speaking industrial people don't care if they have to go a little ways to get it."

One of the witnesses used the term "accessible" in reference to the railroads and the sewer, and also used the term "access." Another witness used the term "adjacent." Plats were introduced portraying the location of these facilities to show the effect

on the remaining 49.33 acres of being cut off. Thus the precondemnation direct access to the railroads and near access to the sewer loomed large in the trial in connection with plaintiff's damage claim.

A party is required to plead his items of damage, by virtue of § 472.22, Code, 1971: "A written petition shall be filed by the plaintiff within twenty days after perfection of the appeal, stating specifically the items of damage and the amount thereof." Pursuant to the statute, plaintiff alleged the amount of his damage to be $214,510 and his items of damage to be:

a. The appropriation of 23.11 acres of Plaintiff's premises.

b. *Loss of access to railroad and sewer previously had.*

c. Making the tract unusable for industrial development.

d. Decreasing the value of the remaining real estate. (Italics added.)

He also alleged *"that after the taking of the real estate above described, there remains no access to any railroad or sewer"*. (Italics added.)

Defendant moved to strike the allegations we have italicized. The trial court viewed the italicized portions as allegations of special damages, as distinguished from factors involved in plaintiff's general damage claim of $214,510 for the difference in the before and after values of his property. The trial court therefore sustained the motion to strike, saying with reference to the railroads, "I don't believe that the Court could submit it to a jury by a statement in the issues as an item of special damages." With reference to the sewer, the trial court said that "it will not be submitted to the jury in the statement of the issues as an item of special damage."

Accordingly, in subsequently instructing the jury on the issues, the trial court did not include plaintiff's stricken allegations regarding the railroads and sewer but submitted the damages thus:

That the items of damage to the property of the plaintiffs by reason of condemnation as claimed by plaintiffs, are as follows:

(a) The appropriation of 23.26 acres of the plaintiffs' premises;

(b) Rendering the remaining tract unusable for industrial development;

(c) Decreasing the value of the tract remaining after the taking of the last above described tract by condemnation.

Likewise, in enumerating the factors to be considered in finding the before and after values, the trial court named location, topography, size, shape, time acquired, improvements, extent taken, character of neighborhood, use, capabilities, potential uses, and all other surrounding circumstances—but did not mention the matters of the railroads and sewer which plaintiff had pleaded. Plaintiff excepted to the trial court's failure to include those matters in the statement of the issues, and repeated the exceptions in the motion for new trial. The exceptions were overruled.

We think the trial court misapprehended plaintiff's pleading and proof with reference to the railroads and the sewer. Those matters were not pleaded as special items of damage. Plaintiff assigned no amount of damage to his allegation (b) of "Loss of access to railroad and sewer previously had," any more than he assigned separate amounts of damage to his allegations (a), (c), and (d). All four of those matters were factors making up his *general* damage claim of $214,510.

 A jury may, of course, consider future uses to which land may reasonably be put, as well as the advantages the land possesses which a seller would press to the attention of a buyer. In re Condemnation of Certain Land, 255 Iowa 711, 124 N.W. 2d 141; Linge v. Iowa State Highway Comm., 260 Iowa 1226, 150 N.W.2d 642. Plaintiff's evidence showed potential use for industrial purposes and also the advan-

tage to an industrial user of adjacent railroads and nearby sewer. We think that since plaintiff expressly pleaded these matters and supported his allegations by evidence, the allegations should not have been stricken from the petition. Too, since plaintiff expressly excepted to the failure to instruct on these matters, the matters should have been included in the instructions—not as separate items of damage but for the bearing the jury might deem them to have on the values of the whole tract and of the tract remaining, just as the other three pleaded items were included in the instructions. Interstate Finance Corp. v. Iowa City, 260 Iowa 270, 149 N.W.2d 308 (particular elements only considered for bearing on damage as a whole); Iowa Development Co. v. Iowa State Highway Comm., 252 Iowa 978, 108 N.W.2d 487; Jones v. Iowa State Highway Comm., 259 Iowa 616, 144 N.W.2d 277 (re-zoning for different use).

■ Defendant contends, however, that plaintiff pleaded loss of "access" to the railroads and sewer but never had access to them. Cases are cited using "access" in the sense of the present right to use, such as Jones v. Iowa State Highway Comm., 259 Iowa 616, 144 N.W.2d 277. Plaintiff could hardly have been using the term access in that narrow sense, for he never claimed or proved he had the present right to use the railroads or sewer or that a spur track or lateral sewer presently existed. Plaintiff pleaded the presence of the railroads and sewer as bearing on the potential industrial value of his whole tract. In considering his use of the term access, the petition on trial is to be construed "in the light most favorable to the plaintiffs [with] doubts resolved in plaintiffs' favor". Appling v. Stuck, 164 N.W.2d 810, 812 (Iowa). We think that plaintiff's evidence demonstrates he was using the term access in the broader sense of the "quality of being easy to approach". American Heritage Dictionary (1969). In this sense, adjacent railroads are more accessible than those at a distance.

Defendant points to the commerce commission proceedings which are necessary in order to require a railroad to build spur tracks. Code, 1966, § 481.3. Here again defendant is using "access" in an unduly restricted sense. At no time did plaintiff claim that he presently had a commerce commission order that a spur be built. Instead, he pointed out in his pleading and proof that his property had greater value in the eyes of an industrial user when the railroads were next to it and the sewer was just beyond than his remaining property had afterward.

The matter of the sewer is not as clear as the railroads. The sewer was not adjacent but nearby. With the condemnation of the 23.26 acres, plaintiff as owner of the remaining land will have the additional highway commission land between him and the sewer. We think here too plaintiff's term access, in the sense of "being easy to approach," was sufficient. The trial court too appears to have thought that "access" was used in a broad sense, as the term "proximity" was used in the trial court's ruling.

The matter of the railroads and sewer goes to the heart of plaintiff's case and necessitates a new trial.

Plaintiff's other claims before us are not necessary to disposition of the appeal. They may, however, arise when the case is tried again and should therefore be considered.

■ II. *Burden of Proof.* Plaintiff claims that since defendant appealed to district court first, defendant is appellant in the district court and has the burden of proof on the trial there.

Plaintiff misconceives the nature of an appeal to district court in eminent domain proceedings. Whether the condemnor or the condemnee appeals, in the district court the condemnee is the plaintiff and the condemnor is the defendant. Code, 1971, §

472.22. The cause stands as though no proceedings before the sheriff's jury had been had; the trial is de novo. Wolfe v. Iowa Railway & Light Co., 173 Iowa 277, 155 N.W. 324. Under § 472.22, the condemnee files his petition and the condemnor, though it took the appeal, cannot dismiss the condemnee out of court. Felker v. Iowa State Highway Comm., 255 Iowa 886, 124 N.W.2d 435. The condemnee has the right as plaintiff to open and close the evidence and arguments, as the case is tried "as in an action by ordinary proceedings." § 472.21. The burden of proof is thus on the condemnee-plaintiff, irrespective of who takes the appeal. As stated in Randell v. Iowa State Highway Comm., 214 Iowa 1, 6, 241 N.W. 685, 688:

> Why is this duty of pleading as plaintiff cast upon the appellee [condemnee] if the resulting burden of proof does not accordingly follow? Upon him who must affirmatively plead always falls the burden of proof. * * * In order for the plaintiff to prosecute the action, as thus contemplated, he must carry the burden of proof to support the allegations of his petition.

The trial court rightly placed the burden of proof on plaintiff.

III. *Rulings on Evidence.* Plaintiff claims the trial court made three erroneous rulings on evidence.

■ (a) One of the comparable sales plaintiff relied on to establish the value of the subject property was the Whitters-Vorkoper transaction in 1961. The instant condemnation occurred on November 9, 1966. Defendant objected to the Whitters-Vorkoper sale as remote. The evidence showed the value of real estate changed considerably in recent years in the vicinity. The trial court observed that a cut-off had to be set as of some point and sustained the objection.

Trial courts have considerable discretion in such matters, and we are not persuaded we should interfere in this instance. Crozier v. Iowa-Illinois Gas & Electric Co., 165 N.W.2d 833 (Iowa). We will say, however, that this evidence might have been admitted, as the price advance through the years was also in evidence.

■■ (b) A comparable sale which defendant proved was the Becker-Bauer transaction in which the deed was delivered in 1966.

On rebuttal, plaintiff placed one Pickard on the stand, who testified he investigated the Becker-Bauer sale. He was asked if that sale was originally on contract. He said it was. Plaintiff then inquired about the contract and Pickard gave its date as December 21, 1958. Pickard then produced an unrecorded contract, which plaintiff introduced in evidence. On the basis of the date of the contract, 1958, plaintiff moved to strike the evidence of the Becker-Bauer sale as remote. The motion was overruled.

If on retrial a Becker-Bauer contract in 1958 is established and appears as a matter of law to be the transaction on which the 1966 deed is based, the Becker-Bauer sale would be remote—unless evidence as introduced as to the comparative 1958 and 1966 values. Then the matter would stand on a footing similar to the 1961 transaction we have mentioned. On the trial as held, however, we think the trial court's refusal to strike the Becker-Bauer sale was right because a fact question existed as to whether the 1966 deed was predicated on the 1958 contract. The matter was properly left to the jury, as the evidence stood.

■ (c) The witness Pickard gave his opinions orally as to the advance in prices in the vicinity. He also prepared Exhibit 4 to show the advance in prices. The objective of this oral and graphic evidence was to enable the jury to relate the sale

prices of comparable properties at various times prior to the condemnation date in 1966. The proceedings are not altogether clear, but as we understand it, the witness concluded that some of the figures on his exhibit were unduly inflated due to such factors as captive sales. For his oral estimates of price advances he therefore made adjustments.

Plaintiff offered Exhibit 4, and, on objection, the trial court excluded it. We find nothing wrong here. The uncorrected exhibit would otherwise have gone to the jury room and might well have been more influential there than Pickard's corrected oral testimony.

IV. *Instructions.* Plaintiff objects to the instructions on the measure of damages, saying the jury was not told that plaintiff is entitled to be made whole, the "cash price" between willing sellers and buyers should not have been referred to, and contradictory terms should not have been used such as "fair and reasonable market value" and "fair and just compensation." The trial court gave the customary definition of fair and reasonable market value in Instruction 7. This court has held that the fair market value, which is to be ascertained, is the cash price between voluntary sellers and buyers. Hardaway v. Des Moines, 166 N.W.2d 578 (Iowa). We think plaintiff's objections to these instructions are overly technical and are untenable.

Reversed.

MASON, RAWLINGS, BECKER and LeGRAND, JJ., concur.

MOORE, C. J., and STUART, J., dissent.

REES, J., takes no part.